74242. GARMON v. HEALTH GROUP OF ATLANTA, INC. et al.

(359 SE2d 450)

BEASLEY, Judge.

A nurse appeals from summary judgment to her former employer Health Group of Atlanta, Inc. d/b/a Doctors Memorial Hospital, and to her supervisor, in an amended suit for wrongful termination by the hospital and tortious interference with her employment by the supervisor.

The nurse was employed by the hospital from November 1972 to November 1973, and from September 1978 through September 1984, as an administrative head nurse and alternate to the director of nursing. Following some dispute and dissatisfaction with scheduling changes in the nursing department, employment was terminated by the supervisor for what the hospital termed "insubordinate unprofessional, and unacceptable" actions and behaviors consisting of "[u]nyielding and belligerent attitude toward colleagues, . . . [r]efusal to comply with a reasonable request made by the employee's supervisor to work collaboratively with peers to achieve a goal within a specific time frame, . . . [u]se of abusive language toward peers, . . . [and] [r]efusal to support the goals and objectives necessary for the continued operation of the Nursing Department."

The nurse acknowledged that she had no formal written contract of employment, but she alleged that she understood that the hospital's policies and past practices with regard to employer-employee relations as well as her job description provided the terms of her employment contract; that according to the hospital's policy statement with regard to conduct, discipline, and termination of employment, she could only be terminated by joint decision of her immediate supervisor and the hospital's personnel director, subject to approval by the divisional vice president or president and the hospital administrator if the discharge was for cause; that if such review had occurred, it would have been apparent that the discharge was improperly motivated and executed and not in the "best interests of the Hospital" as required by the written policies; that the discharge was in breach of the procedural safeguards guaranteed employees by virtue of the hospital's policy statements and of her "employment contract"; that the hospital was under a duty, pursuant to its stated policies and to the law regarding fair employment practices, to investigate the validity of the accusations made against her, which duty the hospital failed to perform or performed inadequately; and that she was therefore discharged completely without cause and in knowing and reckless disre-

gard for the fact that accusations made against her in the scheduling conflict were unwarranted and false. The nurse further alleged that the supervisor wrongfully, maliciously, and recklessly interfered with the employment relationship by wrongfully procuring her discharge based upon false accusations of unprofessional and insubordinate conduct.

Both the hospital and the supervisor moved for summary judgment which was granted, specifically finding that inasmuch as no written contract of employment was executed, employment was terminable at will and did not give rise to a cause of action against the hospital for wrongful discharge. The court further determined that the supervisor both hired and discharged plaintiff with authority, so that no cause of action existed for wrongful interference either.

The nurse claims that the court erroneously failed to consider and rule upon her claim that the hospital's policies regarding termination of employees were enforceable and that the hospital failed to comply with these policies in discharging her. She also claims that the court erroneously found as a matter of law that the supervisor acting alone had authority to discharge her, making the latter's motive irrelevant.

1. The nurse does not now dispute the court's finding that she was an at-will employee, but she maintains that her case presents an issue of first impression unaddressed by the trial court: "whether an employer's policies and procedures manual containing express provisions pertaining to discipline and termination of employees as well as employee conduct is enforceable, and whether an employer's failure to comply with the terms of such a manual can give rise to an action for wrongful termination by an at-will employee."

This argument *was* raised before the trial court, and inasmuch as the court's order recites that the entire record as well as oral argument was considered, it is apparent that the court did consider such position prior to reaching its determination. Although it was under no obligation to make specific findings as to each argument raised in its grant of summary judgment (OCGA § 9-11-52; *Karsman v. Portman*, 173 Ga. App. 108, 109 (3) (325 SE2d 608) (1984)), the court implicitly ruled on the point when it held that where employment is terminable at will, the employer may discharge the employee without liability.

Appellant asks this court to hold that the hospital policies regarding employee termination are legally enforceable in her circumstances so that failure to comply with such policies would support a claim for wrongful termination even though she concedes that the policies cannot be relied upon to transform an at-will employee into a contract employee. See *Burgess v. Decatur Fed. Savings &c. Assn.*, 178 Ga. App. 787 (345 SE2d 45) (1986); *Miles v. Bibb County*, 177 Ga. App. 364 (1) (339 SE2d 316) (1985); *Georgia Ports Auth. v. Rogers*,

173 Ga. App. 538 (1) (327 SE2d 511) (1985). The bases of her argument are that there have been decisions granting an at-will employee relief pursuant to the employer's policies and procedures, citing *Fletcher v. Amax, Inc.*, 160 Ga. App. 692 (288 SE2d 49) (1981); that there is a national judicial trend toward protection of at-will employees, citing numerous decisions from foreign jurisdictions; and that there is room for change in Georgia because OCGA § 34-7-1 does not expressly address the problem of abusive and retaliatory discharges.

"It is axiomatic that appellant has no cause of action against appellee [hospital] for the alleged wrongful termination in light of the uncontroverted evidence that there was no employment contract, either written or oral, between the parties. *Georgia Power Co. v. Busbin*, 242 Ga. 612 (250 SE2d 442) (1978)." *Gibson v. Winn-Dixie Atlanta*, 183 Ga. App. 192, 193 (358 SE2d 320) (1987); OCGA § 34-7-1. The fact that the employee had notice of certain hospital policies and procedures regarding discipline and termination of employees which she alleges were not followed in her discharge would not give rise to an action for wrongful termination.

*Fletcher*, supra, does not aid appellant. The plaintiff in that case was not suing in regard to his employment status, see *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635, 640 (3) (344 SE2d 430) (1986). Rather, he was seeking severance pay based upon internal policies set forth in a procedure and policy manual issued by the company following an amicable termination of his status with the employer. "It is the accepted law of this state that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan. [Cits.]" *Fletcher*, supra at 695; see also *Ga. Ports Auth.*, supra at 540 (2).

The internally administered policies which the nurse seeks to legally enforce go to the essence of the employment relationship and the employer's right in an at-will situation to terminate the employee with or without cause and regardless of motive. *Bendix Corp. v. Flowers*, 174 Ga. App. 620 (330 SE2d 769) (1985). To accept her argument for legal enforcement of the subject policies would, for the purpose of her termination, de facto transform her from an at-will employee into one under contract to the hospital, in violation of OCGA § 34-7-1.

Appellant makes a strong plea for this court to judicially alter the legislative pronouncement in OCGA § 34-7-1 because of trends in other jurisdictions and because she asserts the statute is insufficient by not providing redress for unwarranted discharges. This is a matter of public policy, within the legislative arena, and "in matters of legislation, the supreme authority is in the legislature, . . . 'The wisdom of legislation rests in the General Assembly.' [Cit.]" *Wilson v. Bd. of Re-*

*gents*, 246 Ga. 649, 650 (272 SE2d 496) (1980). Thus, there is no legal basis for the wrongful termination claim and judgment in favor of the hospital was demanded as a matter of law.

2. As to the claim of tortious interference with employment, the nurse asserts that her supervisor did not have authority on her own to discharge her.

It is true "that even though a person's employment contract is at-will, he has a valuable contract right which may not be unlawfully interfered with by a third person. [Cit.]" *Ga. Power Co.*, supra at 613 (2). However, if one has the authority to discharge, he cannot be such a "third person" so as to be liable for wrongful discharge, regardless of motive. Id.

Construing the evidence most favorable to the plaintiff and giving her the benefit of all favorable inferences that can be drawn from the evidence, *Norton v. Ga. R. Bank & Trust*, 253 Ga. 596, 603 (322 SE2d 870) (1984), we find no genuine issue of material fact regarding authority to terminate.

The nurse claims there is a material dispute as to the supervisor's authority because, pursuant to the hospital's policies and procedures manual, the concurrence of the personnel director and divisional vice president or president is necessary to authorize a discharge. She points to the hospital administrator's deposition, wherein he admitted that the document was binding on the hospital and its personnel. Also, in her own deposition she stated that the hospital administrator gave her the impression that he did not learn that she had been terminated until after it occurred, and that he had expressly promised that she would not lose her job if she followed his directions regarding the scheduling dispute.

The cited deposition testimony does not support these contentions. To begin with, the hospital administrator in deposition did not aver that the hospital was bound in a situation such as the nurse's to adhere to the subject policies and procedures manual. Additionally, the administrator, in the deposition, did not challenge the supervisor's authority to fire the nurse but rather confirmed the supervisor's own deposition testimony to the effect that she had authority to hire and fire within the scope of organization assigned to her. Any assurances that the hospital administrator may have made to the plaintiff regarding her employment do not alter the supervisor's undisputed authority to have effected the termination. There could be, then, no tortious interference with the nurse's employment.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 8, 1987.

*John J. Goger, Michelle B. Rapoport,* for appellant.
*Rush S. Smith, Jr., John E. Hall, Jr.,* for appellees.