**Doris K. EAGLE, Plaintiff–Appellee,**

**v.**

**Louis W. SULLIVAN, Secretary of the Department of Health & Human Services, Defendant–Appellant.**

**No. 88–5301.**

United States Court of Appeals, Eleventh Circuit.

July 19, 1989.

Carole M. Fernandez, Asst. U.S. Atty., Miami, Fla., William Kanter, Victoria Nourse, U.S. Dept. of Justice, Civ. Div., Appellate Staff, Washington, D.C., for defendant-appellant.

J. Larry Hart, Carlson, Meissner, Webb & Crider, P.A., New Port Richey, Fla., for plaintiff-appellee.

Before TJOFLAT and CLARK, Circuit Judges, and ACKER *, District Judge.

TJOFLAT, Circuit Judge:

## I.

In May 1982, Doris K. Eagle, who had just turned sixty-five, visited a Social Se-curity Administration (SSA) office in Hialeah, Florida, seeking old-age benefits. A claims representative, Grace Fleming, told Eagle that she was ineligible for old-age insurance benefits because she had not accumulated a sufficient number of work quarters. Eagle accepted Fleming's statement as true, and consequently did not file the written application required for such benefits.[1]

Two years later, on September 14, 1984, Eagle revisited the SSA office and again met with Fleming. Fleming rechecked Eagle's work history, and concluded that she had indeed been eligible for old-age benefits at the time of her first visit. Fleming therefore had Eagle fill out an application for benefits.

In December 1984, the SSA notified Eagle that she would receive old-age benefits effective March 14, 1984, six months prior to the date of her application, as provided by law.[2] Eagle took issue with the SSA's decision to begin her benefits on March 14, 1984, claiming that she should receive them effective May 1982 when she turned sixty-five. The SSA rejected her claim. She thereafter applied for and obtained a hearing before an Administrative Law Judge (ALJ). The ALJ decided that Eagle should receive her benefits retroactive to her sixty-fifth birthday, concluding that Fleming's misrepresentation to Eagle in May 1982—that she had an insufficient number of work quarters to entitle her to old-age benefits—relieved Eagle of the responsibility of filing a written application for such benefits.

---

* Honorable William M. Acker, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. In reciting the procedural history of this case in her brief to this court, Eagle states that she gave Fleming "some papers." Eagle cannot recall what the papers were, and has never contended that they constituted a written application for old-age benefits. The Administrative Law Judge for the Social Security Administration who subsequently considered her claim for such benefits found that Eagle filed no written application. Eagle has not contested this finding.

2. The statute and regulations governing the receipt of old-age benefits require that a claimant file a written application. *See* 42 U.S.C. § 402(a)(3) (Supp. IV 1986) (requiring that a claimant file an application in order to be eligible for benefits); 20 C.F.R. § 404.603 (1988) ("[Y]ou must file an application to become entitled to benefits."); *id.* § 404.610 ("To be considered a claim for benefits, an application must ... be on an application form as described in § 404.611.").

Benefits can be awarded retroactively up to six months prior to the date of the written application's filing. 42 U.S.C. § 402(j)(1)(B) (1982).

The Appeals Council, on its own motion, reversed the ALJ's decision. Following the requirements of the law, the Council ruled that Eagle's benefits would not begin until six months prior to the filing of her application. Eagle then sought judicial review in the United States District Court for the Southern District of Florida. The district court granted Eagle summary judgment, directing the Secretary to pay her old-age benefits retroactive to her sixty-fifth birthday. The Secretary now appeals.

## II.

As noted, the law requires a person seeking old-age benefits to file a written application for such benefits.[3] If the application is approved, benefits are paid effective either six months prior to the date of the application or on the applicant's sixty-fifth birthday,[4] if that date falls within the six-month period. The Secretary contends that the misstatement of an SSA employee, such as the one Fleming made, does not relieve a claimant of the responsibility of filing an application for old-age benefits; in other words, the government is not estopped from denying the benefits Eagle seeks in this case.

The courts have been reluctant to find the federal government, when acting in its sovereign capacity,[5] estopped due to the conduct of its agents, for "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Estoppel is possible, though, where the government's interest in enforcing the law "might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor,

and reliability in their dealings with their Government." *Id.* at 60–61, 104 S.Ct. at 2224 (footnote omitted).

A case that is instructive for our purposes is *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In that case, Hansen had met briefly with an SSA employee to inquire whether she was eligible for certain insurance benefits. The employee erroneously told her that she was not, and she left the office without filing a written application. *Id.* at 786, 101 S.Ct. at 1469–70. When Hansen later found out that she was in fact eligible for benefits and filed the written application, she was denied the benefits she would have received had she filed her written application earlier.

In arguing her case to the Supreme Court, Hansen claimed that the Secretary was estopped from enforcing the law requiring a written application because his employee had caused her to disregard that law. Although the Court left open the question of whether "affirmative misconduct" by an SSA employee could estop the government in a case involving a claim for benefits, it did state that the employee's conduct "did not cause [Hansen] to take action, or fail to take action that [she] could not correct at any time." *Id.* at 789, 101 S.Ct. at 1471 (citations omitted). Thus, the misinformation provided by the employee did not "estop the Government from insisting upon compliance with valid regulations governing the distribution of welfare benefits." *Id.* at 788, 101 S.Ct. at 1471.

In the instant case, Eagle has attempted to distinguish the misstatement made in *Hansen* from the one made to her. She points out that the misstatement in *Hansen* involved a determination that the claimant could have made on her own—whether she was eligible for the insurance benefits. Eagle claims that in her case, however, she

---

**3.** *See supra* note 2.

**4.** Certain claimants will be eligible for old-age retirement benefits on their sixty-second birthday. *See* 42 U.S.C. §§ 402(a), 416(*l*) (Supp. IV 1986).

**5.** Although we have previously held that the government may be estopped when it acts in its

proprietary capacity, *see Federal Deposit Ins. Corp. v. Harrison*, 735 F.2d 408, 411 (11th Cir. 1984), the government acts in its sovereign capacity when distributing welfare benefits. *See George v. Railroad Retirement Bd.*, 738 F.2d 1233, 1236 (11th Cir.1984).

could not detect the misrepresentation—that she did not have sufficient work quarters to qualify for benefits—since only the SSA has access to the relevant information. Thus, Eagle, herself, could not have corrected the error.

The district court, in accepting this distinction, relied primarily on *McDonald v. Schweiker*, 537 F.Supp. 47 (N.D.Ind.1981), *rev'd on other grounds*, 726 F.2d 311 (7th Cir.1982), which held that *Hansen* does not preclude a finding of estoppel where the government employee misstates the number of work quarters necessary to qualify the claimant for retirement benefits. The district court in *McDonald* found that affirmative misconduct on the part of the government was present and therefore estopped it from denying full retroactive benefits. The court reasoned that, unlike *Hansen* which involved a misstatement of the law, the mistake at hand involved a factual determination, the accuracy of which the claimant could not have ascertained, and thereby corrected, because the relevant information was within the exclusive domain of the SSA. *McDonald*, 537 F.Supp. at 50.

The distinction the *McDonald* court drew between a factual and a legal misstatement to avoid *Hansen's* holding is dubious; as the Second Circuit recently observed, "[n]o such distinction is fairly discoverable in *Hansen*." *Scime v. Bowen*, 822 F.2d 7, 9 (2d Cir.1987) (footnote omitted). In *Scime*, as in *McDonald*, an SSA employee misstated a claimant's accumulation of work quarters. The claimant, citing *McDonald*, argued that the government should be estopped because the misrepresentation involved a factual issue. The Second Circuit held that *Hansen* foreclosed the claimant's argument. The court noted that *Hansen*, in rejecting the claimant's estoppel argument, cited with approval a series of lower court cases that denied estoppel claims based on both factual and legal misrepresentations. *Scime*, 822 F.2d at 9.

The difficulty a court encounters in determining whether a particular misstatement is one of fact or law counsels adherence to the SSA's written application requirement in this case. Much of the advice given by SSA employees regarding a claimant's eligibility for benefits involves both questions of fact and law. Trying to draw a clear distinction between the two could lead to wasteful litigation over the nature of the misstatement. Here, the parties agree that the SSA employee's statement to Eagle concerning the number of work quarters she had accumulated constituted a misrepresentation of fact. In other cases, though, the parties might legitimately dispute whether the employee's misrepresentation concerning the claimant's eligibility was one of fact or law. For example, the statement that a claimant does not have enough work quarters to qualify for benefits could reasonably be interpreted as either a misstatement of her work quarters or a misstatement of how many quarters were necessary to qualify the claimant for benefits. The former presents ostensibly the type of factual information that only the SSA has access to, while the latter presents a legal opinion like that in *Hansen*. Claimants could thus argue that their delay in making applications for benefits resulted from a misstatement of the former kind, forcing the SSA to either give full retroactive benefits or litigate.

Thus, creating any exception to the written application requirement based on the nature of the information that an SSA employee gives the claimant subjects the welfare system to abuse. As we stated in a prior case, "the expenditure of funds on proof of claimant eligibility and employee behavior could be astounding." *Payne v. Block*, 714 F.2d 1510, 1518 (11th Cir.), *modified on other grounds*, 721 F.2d 741 (11th Cir.1983), *vacated on other grounds*, 469 U.S. 807, 105 S.Ct. 65, 83 L.Ed.2d 15 (1984).[6] It is precisely because of this potential financial burden on the government that *Hansen*, in fact, recognized that courts should be wary of estopping the

6. Although, in *Payne*, we held the government estopped, that case involved a time limit for filing a claim that completely barred the claim-

ants, while in Eagle's case the error was avoidable by the claimant.

government from enforcing a valid procedural requirement required by Congress for " 'charging the public treasury.' " *Hansen,* 450 U.S. at 788, 101 S.Ct. at 1471 (quoting *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). Moreover, estoppel is particularly inappropriate where Congress has provided means for a claimant to receive at least partial retroactive benefits. In this case, under 42 U.S.C. § 402(j)(1) Eagle received six months retroactive benefits since she had been eligible during that period.

Finally, Eagle argues that because the SSA had the sole possession of the relevant information, the affirmative misconduct which, *Hansen* intimated, might give rise to estoppel, was present. We reject this argument because it appears that here, as in *Hansen,* the claimant could have corrected the error herself.[7] Although the SSA maintains the official work records that indicate the number of quarters a claimant has worked, Eagle should also have been aware of how long she had worked and thus should have been able independently to compute her number of work quarters. She could also have requested the SSA to verify her work record under 42 U.S.C. § 405(c)(2)(A) (1982), which would have enabled her to compute her work quarters.[8] Finally, she could have filed a written application for benefits at the time of her initial visit to the SSA office to protect herself in the event the information given her by the SSA was inaccurate.

For the foregoing reasons, the judgment of the district court is reversed.

REVERSED.

---

7. Since Fleming's misrepresentation to Eagle did not rise to the level of affirmative misconduct, we do not need to decide whether such an exception should exist in the Eleventh Circuit. *See George v. Railroad Retirement Bd.,* 738 F.2d 1233, 1237 (11th Cir.1984). We note, in passing, that in our circuit negligence alone does not constitute affirmative misconduct. *See Deltona Corp. v. Alexander,* 682 F.2d 888, 892 n. 6 (11th Cir.1982) ("The Supreme Court cases leaving the issue open indicate that silence, acquiescence, or even negligence fall short of 'affirmative misconduct.' ").

8. If Eagle believed that the information supplied by the SSA was inaccurate, she could have asked the SSA to correct it and, if the SSA refused to do so, requested judicial review of its action. *See* 42 U.S.C. § 405(c)(5), (7) (1982 & Supp. IV 1986).