**Lafayette BROWN, Jr.,**
**Plaintiff–Appellee,**

v.

**GEORGIA DEPARTMENT OF REVENUE, et al., Defendants,**

**Harry White, et al.,**
**Defendants–Appellants.**

**No. 88–8187.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1989.

Susan L. Rutherford, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellants.

Benjamin P. Erlitz, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, and CLARK, Circuit Judges, and RYSKAMP *, Senior District Judge.

CLARK, Circuit Judge:

Lafayette Brown was a Tax Field Agent for the Georgia Department of Revenue. During the first two weeks of May 1984, he did not report to work for several days because he was in the hospital. On discharge from the hospital, he received a letter from the Department of Revenue stating that his absence from work was deemed an abandonment of his position. Subsequently, he was told that he had no appeal rights. Mr. Brown filed suit in federal district court for the Northern District of Georgia alleging his termination violated the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1985. After a one day bench trial, the district court granted the plaintiff part of the relief he requested, namely a hearing before the State Personnel Board. The defendants appeal that decision. We have jurisdiction under 28 U.S.C. § 1292(a)(1).[1] Because we find that the

---

* Honorable Kenneth Ryskamp, District Judge, Southern District of Florida, sitting by designation.

1. Section 1292(a)(1) states:

(a) ... the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States ... granting,

plaintiff had a property interest in continued employment and that the defendants deprived him of that interest without due process, we affirm the district court.

## I.

### A. Facts

Lafayette Brown worked for the Georgia Department of Revenue from September 1981 through May 1984. He was a classified employee covered by the Georgia Merit Systems Act, O.C.G.A. § 45–20–1 *et seq.* On Monday, April 30, 1984, Mr. Brown did not report to work, but called in sick to his supervisor, Jacqueline Fitzgerald, stating that he was in the hospital because of possible kidney stones. Record, Vol. 3, at 150. He did not return to work until Friday, May 4th, at which time he brought a doctor's note. *Id.* Because he was in pain, however, his supervisor allowed him to leave early. *Id.* at 48.

On Monday morning, May 7th, according to Mr. Brown's testimony, the pain was much worse and he took a taxi to the hospital. When he could not pay the fare, he was arrested and brought to Atlanta City Jail. *Id.* He was detained overnight on charges of theft, but brought to Grady Hospital on Tuesday morning. *Id.* at 49. He did not contact his supervisor, however, until Wednesday morning, May 9th, because he was groggy from pain medication. *Id.* at 90. At that time, he informed Ms. Fitzgerald that he was in the hospital and did not know how long he would be there.[2]

Mr. Brown remained in the hospital until Friday May 11th, but had no other contact with his office. On his return home,[3] he received a letter which stated that pursuant to Rule 12, § 12.202 of the Rules and Regulations of the State Merit System,[4] he was deemed to have abandoned his job because he was absent for five days without being on leave. The letter did not indicate whether Mr. Brown had any right to review of the decision. Mr. Brown testified, however, that after receiving the letter he called Joyce Kelly, the Personnel Director, who directed him to John Smith, the Director of Field Services. According to Mr. Brown, Mr. Smith told him there was nothing he could do.[5] Record, Vol. 3, at 54. On July 9th, however, Mr. Brown wrote a letter to the Merit System of Georgia and asked for review of the decision. Record, Vol. 1, Tab 27, Exhibit A. In response, he received a letter stating that he had no right to an appeal. *Id.* at Exhibit B.

### B. Procedural History

Mr. Brown filed suit in federal district court alleging violations of the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1985. Mr. Brown named as defendants the Georgia Department of Revenue, the State Personnel Board, the State Merit System, and three employees of the Department of Revenue in their individual and official capacities: Harry White, Gary Robinson, and Jacqueline Fitzgerald.[6] Thus began a long and tortuous procedural histo-

---

continuing, modifying, refusing or dissolving injunctions ...

**2.** Mr. Brown testified that after explaining this to Ms. Fitzgerald, she said "Okay." Record, Vol. 3, at 50. Ms. Fitzgerald, however, testified that Brown hung up immediately without waiting for any response. *Id.* at 137, 151. She did testify, however, that on instruction from her supervisor, she went to Grady to verify that he was there. She was told that he was a patient, but she did not see him because he was in a locked ward. *Id.* at 154.

**3.** The theft charges were dropped. Record, Vol. 3 at 90.

**4.** Rule 12.202 states:

Abandonment of Position. Any employee who is absent from duty for five (5) consecutive work days or equivalent, without proper

notification and authorization thereof, within the discretion of the appointing authority or his designee may be deemed to have resigned voluntarily from his position.

State Personnel Board Rules & Regulations, Record, Vol. 1, Tab 20.

**5.** Mr. Brown testified that "his comment basically was the letter speaks for itself. There is really nothing else I can say or anybody can say...." Record, Vol. 3, at 51. Mr. Smith did not testify at trial.

**6.** Jacqueline Fitzgerald was Mr. Brown's immediate supervisor. Gary Robinson was the Assistant Regional Manager of the Department of Revenue. Harry White was the Regional Manager.

ry in which the district court attempted to clarify both the proper defendants and the substantive claims. Because the resolution of the issues on appeal necessitates a clear understanding of the procedural history, we present that history in more detail than usual.

### 1. The Parties

In their answer and summary judgment motion, the defendants raised the Eleventh Amendment as a defense. In an order dated March 5, 1987 ("the March 5 order"), the court granted summary judgment for the Department of Revenue, the Merit Systems Board,[7] and the three defendants in their official capacity on Eleventh Amendment grounds. Since the plaintiff sought compensatory relief, the court held the Eleventh Amendment barred the suit against these defendants because the state was the real party in interest. Record, Vol. 1, Tab 23. The court also granted plaintiff's motion to amend the complaint to add three new defendants, all employees of the Department of Revenue in their individual and official capacities: Joyce Kelly, Fred White and John Smith.[8] Then in an order dated July 7, 1987 ("the July 7 order"), the district court also ordered summary judgment on Eleventh Amendment grounds for the three new defendants in their official capacity. Recognizing for the first time that the plaintiff also sought prospective injunctive relief, however, the court held that the Eleventh Amendment did not bar suit against the Personnel Board or the Department of Revenue insofar as it sought equitable relief. Record, Vol. 1, Tab 31.

Finally, on September 14, 1987, the plaintiff again sought leave to amend his complaint by deleting the state agencies as defendants and substituting Marcus Collins, the Commissioner of the Department of Revenue in his official capacity and the six members of the State Personnel Board in their official capacity: Susan Landrum, Richard Babush, Charles Storm, Pamela Fuller, W. Howard Fowler, and C. Ron Cheeley. The plaintiff also sought reconsideration of the prior dismissal of the Department of Revenue employees in their official capacity. At an oral hearing on that date, the district court granted the motion to amend. Record, Vol. 2, at 11. Therefore, the defendants at trial were: (1) Marcus Collins and the six members of the Personnel Board in their official capacity and (2) the six employees of the Department of Revenue in both their official and individual capacity.

### 2. The claims

The claims asserted by the plaintiff were also subject to a confused history. The complaint alleged violations of the Fourteenth Amendment, Title VII, and 42 U.S.C. § 1985. The plaintiff voluntarily dismissed the latter two claims in the March 5 order. The substance of the case therefore was that the dismissal violated substantive and procedural due process as well as equal protection. In the March 5 order, the district court held there was no property interest created by the Georgia Merit Systems Act and therefore dismissed both the substantive and procedural due process claims. The court then asked the parties to brief the question of whether *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), barred the federal suit because the complaint merely alleged that state officials had violated state law. Record, Vol. 1, Tab 23, at 8. In the course of considering the *Pennhurst* issue, the district court reconsidered its prior dismissal of the procedural due process claim and allowed the case to proceed to trial on procedural due process and equal protection grounds. On September 15, 1987, the court also reversed its holding dismissing the substantive due process claims. Record, Vol. 1, Tab 38.

---

7. The defendants had not explicitly asserted the Eleventh Amendment defense on behalf of the Personnel Board. Record, Vol. 1, Tab 23, at 5.

8. Joyce Kelly was a Director of Personnel for the Department of Revenue. Fred White was the Assistant Director for Field Services and John Smith was the Director of Field Services for the Department.

At the conclusion of the bench trial, the district court dismissed the claims against the Department of Revenue employees in their individual capacity, except for John Smith.[9] Although the court found him responsible for the termination, the court determined that he was entitled to qualified immunity. The court also held that the State Personnel Board members had violated the plaintiff's rights by failing to grant him a hearing. The court therefore ordered the members of the Personnel Board to give Mr. Brown a hearing and stayed the other portions of the order pending the outcome of the hearing. Record, Vol. 1, Tab 42. The members of the Personnel Board appealed this order.

## II. THE ISSUES ON APPEAL

The appellants raise three issues on appeal. First, they contend that the district court erred in allowing the plaintiff to amend the complaint to include the members of the Personnel Board in their official capacity. Second, the appellants argue that the Eleventh Amendment prohibits the relief granted in this case insofar as the district court ordered the state officials to comply with state law. Finally, the appellants argue that the district court erred in finding that the plaintiff was denied procedural due process. We affirm the district court on all three grounds.

### A. Amendment of the Complaint

■ The first issue on appeal concerns whether the district court erred in allowing the plaintiff to amend his complaint to add the individual members of the State Personnel Board in their official capacity.[10] The appellants argue that the amendment was not proper under Federal Rule of Civil Procedure 15(c)[11] because the substituted defendants had no notice of the suit and did not know that absent the mistake, they would have been named as defendants. The appellants seek support for their argument in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

In *Schiavone*, the plaintiffs originally named "Fortune, Inc." as a defendant in a libel suit arising from a story in Fortune magazine. Upon learning that Fortune was merely a trademark of Time, Inc., the plaintiff sought to amend the complaint to add Time as a defendant after the statute of limitations had run. The Supreme Court held that for an amendment to relate back under Rule 15(c) four factors must be satisfied:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 29, 106 S.Ct. at 2384.[12] The plaintiffs argued that Time received notice of the suit because they had attempted to serve the

---

9. The court's order did not include any reference to Marcus Collins, the Director of Revenue.

10. The statute of limitations on § 1983 cases in Georgia is two years. *Williams v. City of Atlanta*, 794 F.2d 624 (11th Cir.1986) (citing *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d (1984)). Under the most liberal allowances the statute of limitations would have expired in August 1986.

11. Rule 15(c) states:

Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, the amendment relates back to the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied, and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

12. The Court read the language of Rule 15(c) which required notice to the new parties "within the period provided by law for commencing the action," to refer to the statute of limitations. *Id.* at 31, 106 S.Ct. at 2385.

original complaint on Time, but Time's agent refused service because Time was not named as a defendant. Since service of the original complaint was not attempted until after the statute of limitations had expired, however, the Court held the fourth requirement had not been met. *Id.* at 30. 106 S.Ct. at 2385.

This case is distinguishable on that precise point. The State Personnel Board was served with the original complaint within the statute of limitations period.[13] In this case, we find that service on the Personnel Board as an entity was sufficient notice to the individual members sued in their official capacity. Amending the complaint was necessary to comply with the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908) (although Eleventh Amendment bars suit against state, it does not bar suit against state official in official capacity). Since the Personnel Board had been a party to the case, there was no prejudice from the late amendment naming the Board members. Since the members were sued in their official capacity, they could only assert defenses available to the state agencies, not any personal defenses. The Attorney General, who under Georgia law represents all state officials sued in their official capacity, O.C.G.A. § 45–15–3(6), represented the State Board and raised those defenses. Moreover, the fact that the Attorney General raised the Eleventh Amendment defense throughout the proceedings evidenced his awareness of the pleading mistake. In such a situation it is reasonable to conclude that the individual Board members should have known that they were the correct defendants. *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 221 n. 6, 106 S.Ct. 507, 511 n. 6, 88 L.Ed.2d 523 (1986); *Sims v. State of Florida*, 862 F.2d 1449, 1460 (11th Cir.1989) (in banc); *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir.1988); *see also Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989).[14]

### B. *Pennhurst*

■ The appellants' second argument is that the Eleventh Amendment barred the district court from ordering the Personnel Board members to hold a hearing. They argue that under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment bars a federal court from ordering the state to comply with state law. This issue need not detain us long for the appellants misconstrue the holding of *Pennhurst* and the claim presented in this case. Since the plaintiff alleged a violation of the federal Constitution, *Pennhurst* does not apply. In *Pennhurst*, the Supreme Court reversed the Third Circuit's holding that conditions at a state institution for the mentally retarded violated state law. 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The court held "that a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the state itself." *Id.* at 117, 104 S.Ct. at 917. The Court reasoned that the exception to the Eleventh Amendment established in *Ex parte Young* was justified by the "need to promote the supremacy of federal law." *Id.* at 105–06, 104 S.Ct. at 910–11. When the suit is brought under state law, however, there is no comparable justification. *Id.*

In this case, the district court ordered the State Personnel Board to conduct a hearing. Because the court ordered the hearing to comply with the State Personnel Rules, the appellants argue that the district court ordered the state to comply with state law. Under *Pennhurst*, however, the determinative question is not the relief ordered, but whether the relief was ordered pursuant to state or federal law. Despite the confusing procedural history of this case, it is clear that the district court ordered the hearing under federal law. Al-

---

13. Service on the State Merit System and the State Personnel Board was acknowledged on December 19, 1985. Record, Vol. 2, at 9.

14. We reiterate that this holding is dependent on the fact that the Board members were sued in their official capacities. It would be an entirely different case if the members were sued in their individual capacities for damages.

though the final district court order does not explain the grounds for granting relief, at the conclusion of the bench trial the court gave the basis for its ruling:

> [i]t is apparent to me that Mr. Brown did have a right to a hearing before the State Personnel Board and that he was misadvised. It is clear to me that both the state and *federal constitutions* require in a case such as this one where the state employee wishes to contest factually the claim that he abandoned his job, that he is entitled to a hearing and the State Personnel Board erred in not notifying Mr. Brown that he was entitled to a hearing.

Record, Vol. 3, at 216 (emphasis added). Since the relief was granted as a matter of federal due process, *Pennhurst* is no bar.

### C. Procedural Due Process

██ The central issue on appeal is whether the letter from the Personnel Board informing Mr. Brown that he had no right to a hearing violated procedural due process. The Fourteenth Amendment protects against deprivation of liberty or property without due process of law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). The first question is whether Mr. Brown had a constitutionally protected property interest in continued employment.[15] We do not need to address the second question, namely what process is due, because the only issue on appeal is the propriety of *any* hearing rather than the type of hearing necessary.

The Supreme Court has recognized that "property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571–572, 92 S.Ct. at 2706. In *Roth*, the Court stated:

> Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that

secure certain benefits and that support claims of entitlement to those benefits. *Id.* at 577, 92 S.Ct. at 2709.

Mr. Brown is a permanent employee governed by the Georgia Merit Systems Act. The Merit Systems Act states that "[p]ermanent status employees may be dismissed from employment or otherwise adversely affected as to compensation or employment status only if such action is taken in accordance with the rules and regulations of the State Personnel Board." O.C.G.A. § 45–20–8(a). The appellants argue that under state law Mr. Brown did not have a constitutionally protected property interest in his job because subsection (b) states "[t]his article is not intended to create a property interest in the job, but rather to create only a procedure under which permanent status employees can be dismissed or otherwise affected." According to the appellants property interests are "created and ... defined by ... state law," this express disclaimer ends the inquiry.

The appellee argues that the Georgia Supreme Court's opinion in *Clark & Stephenson v. State Personnel Board*, 252 Ga. 548, 314 S.E.2d 658 (1984), interprets the statute to create a property interest. In *Clark*, the issue facing the Court was whether the declassification of certain positions violated the Georgia Constitution's prohibition on laws "impairing the obligations of contracts." Art. I, Sec. I, Para. VII, 1976 Constitution of Georgia. The Court concluded that "to say that the Merit System Act does not create a constitutionally protected contract between the merit system members and the state would overlook the obvious purposes of the Act itself." *Id.* at 550, 314 S.E.2d at 660. Because the Act creates a constitutionally protected contract, the Court held that when a position is declassified, the employees are entitled to the protections of the Merit Systems Act before they are demoted. *Id.* Although the Court was not faced with the question of whether there was a property interest, its reasoning is of significance to such an analysis because it represents the most recent interpretation of the Merit Systems

---

**15.** Mr. Brown has not alleged any deprivation of liberty.

Act.[16] The Court held that the purpose of the Act was to establish a career service in government and personnel administration based on merit. *Id.* The statute therefore creates a systematic classification of positions based on merit and "reasonable job security for the competent employee" by providing that permanent status employees may not be fired except in accordance with the Personnel Board rules. *Id.*

 These two sources of state law initially create confusion as to whether the Merit Systems Act creates a constitutionally protected property interest. On closer look, however, it becomes apparent that the statutory disclaimer is not dispositive of the issue. The cases from the Supreme Court and this court reveal that the existence of a property interest is a matter of federal constitutional law that depends on an interpretation of state law. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1976). More specifically, as a matter of federal law a property interest is created whenever a public employee can only be fired "for cause." State law determines whether a particular employee is terminable at will or only for cause. An explicit contractual provision or rules or common understandings may determine that issue. *Perry v. Sindermann,* 408 U.S. 593, 602 & n. 7, 92 S.Ct. 2694, 2700 & n. 7, 33 L.Ed.2d 570 (1972); *see Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976); *Hatcher v. Board of Public Education & Orphanage,* 809 F.2d 1546, 1551 (11th Cir.1987); *Ogletree v. Chester,* 682 F.2d 1366, 1370 (11th Cir.1982); *Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir.1981); *Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980).[17] In this case, since the Merit System Act, as interpreted by the Georgia Supreme Court in *Clark & Stephenson,* and the Personnel Board regulations require cause for dismissal, we find that the appellee had a property interest in his job. An analysis of the case law and the statute and regulations at issue will make this conclusion clear.

### 1. *Case Law*

In both *Roth* and *Sindermann,* nontenured professors brought procedural due process claims when they were not reappointed to their positions. In *Sindermann,* the Court held "[a] person's interest in a benefit is a 'property interest' for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." 408 U.S. at 601, 92 S.Ct. at 2699. The Court held that a contractual provision providing that an employee would only be discharged for cause creates a legitimate entitlement to continued employment absent cause. *Id.* In *Roth,* the lack of such language negated a finding of a property interest since the plaintiff could point to nothing else—statute or common law—that gave him any legitimate claim to continued employment. *Roth,* 408 U.S. at 578 & n. 16, 92 S.Ct. at 2710 & n. 16. In *Sindermann,* however, the plaintiff did assert that he had an implied guarantee that he would be reemployed. The Court explained that Texas law would determine whether such a guarantee existed. *Sindermann,* 408 U.S. at 602 n. 7, 92 S.Ct. at 2700 n. 7.

In *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court determined that a police officer in Marion, North Carolina did not have a property interest in his job. The Court noted that "the sufficiency of the claim of entitlement must be decided by reference to state law." *Id.* at 344, 96 S.Ct. at 2077 (footnote omitted). First the Court determined that North Carolina law did not recognize implied "for cause" contracts in public employment, but rather required an explicit contractual guarantee of continued employment. *Id.* at 345, 96 S.Ct. at 2077. The Court therefore looked at the ordinance governing the employment of police

---

**16.** The statutory disclaimer was added to the statute in 1979. 1979 Ga.Laws 783.

**17.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

officers and found that under state law, the ordinance provided that a police officer " 'held his position at the will and pleasure of the city.' " *Id.* at 345, 96 S.Ct. at 2078 (citation omitted). Although the ordinance on its face could "fairly be read" to require cause,[18] the Court deferred to the contrary interpretation of the state law by the district court "who, of course, sits in North Carolina and practiced law there for many years." *Id.* The Court emphasized that the determinative factor was that state law classified police employees as "at will." [19] Since *Bishop*, there has been no dispute that an employee has a property interest if he may only be dismissed for cause. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *cf. Memphis Light, Gas & Water*, 436 U.S. at 11, 98 S.Ct. at 1561. (Tennessee residents had a property interest in continued utility service because "[s]tate law does not permit a public utility to terminate service 'at will' "); *Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975) (students had property interest in remaining at school because school officials had limited power to suspend students).

■ As the *Sindermann* Court noted, state law can create an entitlement to a job through explicit contractual provisions or through "rules or mutually explicit understandings." 408 U.S. at 601, 92 S.Ct. at 2699. This court has recognized that personnel rules and regulations may create a property interest if they impose requirements or procedures regarding dismissals which are analogous to requiring cause. *Glenn*, 614 F.2d at 472; *see Barnett v. Housing Authority of the City of Atlanta*, 707 F.2d 1571 (11th Cir.1983); *Winkler*, 648 F.2d at 414. Recently, however, this

court affirmed a district court order declining to follow this line of case law. *Wofford v. Glenn Brunswick Memorial Hosp.*, 864 F.2d 117 (11th Cir.1989). In *Wofford*, this court read *Garmon v. Health Group of Atlanta*, 183 Ga.App. 587, 589, 359 S.E.2d 450 (Ga.App.1987), to hold that under state law, internal personnel policies cannot transform an at will employee into a tenured employee. In *Garmon*, the Georgia Court of Appeals held that an employee of a hospital did not have a suit for wrongful termination because the hospital did not comply with personnel rules. The *Garmon* Court determined that to allow a suit for wrongful termination would "transform [the plaintiff] from an at-will employee into one under contract to the hospital in violation of O.C.G.A. § 34–7–1." *Id.* at 589, 359 S.E.2d at 450. *Wofford* and *Garmon* do not control this case for two reasons. First, the plaintiff in *Garmon* conceded that she was an at will employee; she did not argue that the personnel policy had made her a tenured employee. *Id.* at 588, 359 S.E.2d at 452. Second and more importantly, *Clark & Stephenson* holds that the employee is entitled to rely on the Personnel Board regulations as the terms of his contract. Therefore, both the Merit Systems Act and the Personnel Board regulations are relevant to the question of whether a covered employee has a property interest in his job.

■ Therefore the case law explains that the appropriate inquiry into whether a property interest exists is determined by considering whether under state law, the employee could be fired only for cause. We must look at both the Merit Systems Act and the Personnel Board's regulations. The appellant's argument that the statu-

**18.** The ordinance provided that "[i]f a permanent employee fails to perform work up to the standard of the classification held, or [is] negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager." *Id.* at 344 n. 5, 96 S.Ct. at 2077 n. 5.

**19.** It is on this point that the case was distinguished from *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), in which the Court had interpreted similar federal regulations to require cause for dismissal, thereby

creating a property interest. *Bishop*, 426 U.S. at 345 n. 8, 96 S.Ct. at 2078 n. 8. Although the *Arnett* Court was badly divided on what process was due, the Court unanimously agreed that the regulations created a property interest. *See Arnett*, 416 U.S. at 152, 94 S.Ct. at 1643 (opinion of Rehnquist, Burger & Stewart); *id.* at 166, 94 S.Ct. at 1650 (opinion of Powell & Blackmun); *id.* at 176, 94 S.Ct. at 1655 (opinion of White); *id.* at 209, 94 S.Ct. at 1671 (opinion of Marshall, Brennan, & Douglas).

tory disclaimer ends the analysis misconstrues the function of state law in the analysis. "Although the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause" *Memphis Light, Gas, & Water Division,* 436 U.S. at 9, 98 S.Ct. at 1560 (emphasis added) (citations omitted).

### 2. *Georgia law*

The appropriate starting point is of course the Merit Systems Act. The Georgia Supreme Court's recent interpretation of the statute in *Clark & Stephenson* leaves little room for concluding that a covered employee is terminable at will.[20] As pointed out above, the Court found that the statute was intended to create a merit system and provide job security. Although the Court never used the magic words "for cause," it did state that the *competent* employee would have job protection. Moreover, although the statute leaves the task of defining the reasons for dismissal and the procedures to be used to the State Personnel Board, the statute does set forth the minimum procedural requirements for dismissal, namely notice and right to a post-termination hearing. O.C.G.A. § 45–20–8(b). Thus the statute envisions that an employee be allowed to contest the reasons for his dismissal suggesting that there is some substantive limitation on the state's ability to fire covered employees.

The Personnel Board Rules and Regulations support a finding that employees may only be dismissed for cause. Rule 15.204 states that a permanent status employee may only be dismissed for "negligence or inefficiency ...; inability or unfitness to perform assigned duties; insubordination; misconduct; conduct reflecting discredit on the department; commission of a felony or other crime involving moral turpitude; chronic tardiness, or absenteeism; failure to report for or remain at work without justifiable cause; or political activity in violation of Rule 3." Rule 15 provides procedural protections before any adverse action may be taken, namely written advance notice, a reasonable time to refute the charges, and a written determination of the final action. In addition, Rule 14 provides for appeal after final decision for "any purported violations of the rules."

Although the words "for cause" do not appear in the regulations, the discretion of the state to dismiss an employee is circumscribed. In addition, the rules explicitly grant the employee a hearing at which to dispute the facts. Moreover, in a prior version of the regulations, which did require cause for dismissal, cause was defined by reference to the language now included in Rule 15.204. *See Eley v. Morris,* 390 F.Supp. 913, 925 (N.D.Ga.1975) (earlier version included as appendix to opinion). These factors weigh in favor of finding that public employees have a legitimate entitlement to continued employment.

To avoid that result, the appellants argue that Rule 12 which discusses voluntary abandonment of jobs negates any claim of entitlement to continued employment. The appellants seem to be arguing that since Mr. Brown voluntarily abandoned his job, he had no property interest in it. This argument begs the question since it relies on a characterization of the termination of Mr. Brown's employment as a voluntary abandonment rather than an involuntary dismissal.[21] Moreover, an employee's en-

---

**20.** There is another problem with the appellants' argument that the statutory disclaimer ends the inquiry. Although the statute evidences an intent on the part of the Georgia legislature not to create a property interest, we have held that "'the state may not magically declare an interest to be '*non* property' after the fact for Fourteenth Amendment purposes, if, for example, a long-standing pattern of practice has established an individual's entitlement to a particular benefit.'"

*Winkler,* 648 F.2d at 414 (quoting *Quinn v. Syracuse Neighborhood Corporation,* 613 F.2d 438, 448 (2d Cir.1980)). Thus, even if the Georgia Supreme Court had not held as it did in *Clark & Stephenson,* the appellants' argument still might not have prevailed.

**21.** The appellants argue that since Mr. Brown voluntarily left his job, he was not dismissed. However, when Mr. Brown contests the fact that he voluntarily abandoned his job, the appel-

titlement to continued employment rests on a consideration of the regulations as a whole. As a whole, the regulations provide that an employee is entitled to believe he will have a job unless he does something to disentitle himself to it. He may disentitle himself to it if he abandons it or if his supervisor believes he fits into the categories in Rule 15.204.

 This analysis makes clear that a public employee governed by the Merit Systems Act and the State Board Personnel Rules has a property interest in his job entitling him to the protections of due process. The appellants raise one final argument to avoid having to give Mr. Brown a hearing at this late date. They argue that Brown waived his right to a hearing. Although there may be situations in which the plaintiff's behavior can waive any procedural due process rights to which he was entitled, we do not think this is such a case. The plaintiff never received any notice of his right to review. Indeed, the plaintiff's uncontradicted testimony established that John Smith led him to believe he had no appeal rights. Indeed even after the plaintiff independently realized that he might have a right to appeal, the State Personnel Board sent him a letter stating "[t]here is no provision for appeal of separation under Rule 12.202 if the separation is done in accordance with the Rule and there is, therefore, no requirement of any notice of appeal." Record, Vol. 1, Tab 27, Exhibit B. The appellants argue that this letter merely states that an appeal is not possible under the abandonment rule but does not rule out the possibility of an appeal under the catchall provision, Rule 14.212. When considered against the background of Mr. Brown's dealings with the Department of Revenue officials immediately after his dismissal, however, we think Mr. Brown was reasonable to read this letter to preclude any appeals. In light of these facts, we cannot conclude that the plaintiff waived

any rights. *See Barnett,* 707 F.2d at 1578 (no waiver of due process rights when delay attributable to state officials).

### III.

We therefore affirm the district court on all grounds. The district court did not err in allowing the amendment to correct the Eleventh Amendment error. The court also was not barred from considering the claims because they were based on federal constitutional law. Finally, the plaintiff had a property interest in his continued employment and he was deprived of that interest without due process of law. The district court order granting Lafayette Brown a hearing by the State Personnel Board is AFFIRMED.

TJOFLAT, Circuit Judge, dissenting:

### I.

In September 1981, the Georgia Department of Revenue hired appellee Lafayette Brown as a Tax Field Agent. After completing his working test period in September 1982, appellee became a permanent employee under the Georgia Merit Systems Act. *See* Ga.Code Ann. § 45–20–1 to –15 (1982 & Supp.1988). Among other things, the Merit Systems Act provides permanent employees with procedural protections against actions that adversely affect an employee's employment status. *See id.* § 45–20–8 (Supp.1988).

On Monday morning, May 7, 1984, appellee became seriously ill and did not report for work. From Tuesday, May 8 through Friday, May 11, appellee was in the hospital. On Wednesday, May 9, appellee telephoned his supervisor, Jacqueline Fitzgerald. Appellee testified that he stated, "Jackie, this is Lafayette. I am in Grady Hospital. I don't know exactly how long I'm going to be here, but I will be back in touch with you, and I'll keep you abreast

---

lants argue that Mr. Brown gets no hearing to air his dispute because he voluntarily abandoned his job. If we allowed such circular reasoning to bar Mr. Brown's claim, we would allow the state to obviate a need for a hearing merely by characterizing a dismissal as an aban-

donment. *See Hatcher,* 809 F.2d at 1551 (question of whether Georgia courts would consider transfer a "demotion" not the issue; issue is whether the statutory scheme creates a legitimate claim of entitlement).

on what the situation is," and that Fitzgerald replied, "Okay." [1] Appellee made no other attempts to contact Fitzgerald while he was hospitalized.

Because appellee did not specifically request sick leave during his conversation with Fitzgerald, her supervisors took the position that appellee had not reported to work during the week of May 7. Under the Rules and Regulations of the Georgia State Merit System, such conduct may be deemed a resignation. *See* Ga.Comp.R. & Regs. (State Personnel Board) r. 12.202 (1987). Accordingly, when appellee came home from the hospital, he discovered a letter informing him that he had been terminated. The letter of termination was dated May 11, 1984 and stated as follows:

Dear Mr. Brown:

At the recommendation of Mr. John Smith, Director of the Field Service Division, this is to advise that your employment is terminated effective at the close of business May 11, 1984.

This action is taken in accordance with Rule 12, Section 12.202 of the Rules and Regulations of the State Merit System— Abandonment of Position.

. . . .

If you have any questions, please feel free to call me.

Sincerely,

/s/ Joyce J. Kelly

Joyce J. Kelly

Personnel Administrator

Shortly after receiving this letter, appellee telephoned Kelly and told her that he did not understand what was going on and why her letter said he had abandoned his

position. Kelly told appellee that he would have to speak to Mr. John Smith, the Director of Field Services. When appellee contacted Smith and asked him to clarify the reason for his termination, Smith responded that he thought the letter spoke for itself; Smith did not inform appellee that he had a right to appeal his termination to the Georgia State Personnel Board.[2]

On July 9, 1984, appellee sent the following letter to Reese Theus, Chief Hearing Officer of the Georgia State Personnel Board:

Dear Mr. Theus;

I was discharged from my position as Tax Agent for the Department of Revenue on May 11, 1984. This action was taken without advance warning and without a departmental review.

I have recently been informed that I'm entitled to certain review rights through the Merit System of Georgia. Based upon this information, I'm formally requesting information on my right of appeal thru [sic] the merit system.

. . . .

Sincerely yours,

/s/ Lafayette Brown Jr.

Lafayette Brown Jr.

Upon receiving this letter, Theus responded on July 12, 1984 as follows:

Dear Mr. Brown:

Your letter of July 9, 1984 was received today. In the phone conversation with Mr. James, you indicated that you had been dismissed without notice of your right of appeal. However, the letter of May 11, 1984, from Ms. Kelly shows that

---

1. Ms. Fitzgerald remembers the conversation differently. She testified that appellee said, "Jackie, I'm calling in. I haven't reported in two days, and I'm in Grady Hospital," and appellee then hung up the phone before she had a chance to respond.

2. The majority states that "the [appellee's] uncontradicted testimony established that John Smith led him to believe he had no appeal rights." *Ante* at 4030. This mischaracterizes the appellee's testimony at trial, which was as follows:

Q. Did you talk to John Smith?
A. Briefly.

Q. Could you tell us about that conversation, what was said?
A. I just told him I couldn't understand what was going on and why his letter saying I abandoned my position.
His comment basically was the letter speaks for itself. There is really nothing else I can say or anybody can say, and that's it.
Q. Did Mr. Smith say anything to you about appeal rights?
A. No.
Thus, Smith did not intentionally mislead appellee, as the majority opinion implies, but simply failed to take the initiative to advise appellee of his appeal rights.

you were separated under provisions for Abandonment of Position. This rule provides that if you are absent from your job for five consecutive work days without notice to and approval of your supervisor, you may be separated. There is no provision for appeal of separation under Rule 12.202 if the separation is done in accordance with the Rule and there is, therefore, no requirement of notice of appeal.

Your attempt to appeal this matter is now denied. I regret that I can be of no further assistance in this matter.

Sincerely,

/s/ Reese E. Theus

Reese E. Theus

State Personnel Board Executive & Chief Hearing Officer

As a result of this correspondence, appellee filed suit in the United States District Court for the Northern District of Georgia on December 12, 1985, seeking injunctive relief and damages under the due process clause of the fourteenth amendment to the United States Constitution and various federal statutes. *See* 42 U.S.C. §§ 1983, 1985(3), and 2000e (1982). After the district court resolved a protracted series of motions to dismiss various parties and claims, appellee's suit was narrowed to a claim under section 1983 that the Personnel Board of the Georgia Merit System had denied him due process of law. A bench trial ensued, following which the district court found that the members of the Georgia State Personnel Board "wrongfully failed to inform and to grant [appellee] the right to appeal his termination on May 11, 1984." Accordingly, the district court ordered the Board to afford appellee a hearing concerning his termination. This appeal followed.

## II.

To establish a claim under the due process clause of the fourteenth amendment, appellee first must establish that he had a property interest in his employment with the Georgia Department of Revenue. The Supreme Court has noted that:

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Having established a property interest in his employment, appellee must then prove that the state officials deprived him of that right without due process of law. Because I believe that appellee fails to meet this test, I respectfully dissent.

## A.

Rule 12.202 of the Georgia State Personnel Board provides as follows:

Abandonment of Position. Any employee who is absent from duty for five (5) consecutive workdays or equivalent, without proper notification and authorization thereof, within the discretion of the appointing authority, may be deemed to have resigned voluntarily from employment.

Ga.Comp.R. & Regs. (State Personnel Board) r. 12.202 (1987). This rule allows the State promptly to terminate employees who fail to show up for work, and to fill abandoned positions quickly so as to assure the continued orderly administration of government. Because the employee's termination is deemed a "voluntary separation" under Rule 12.202, the employee has no right to appeal the State Merit System's decision as if it were an adverse action. *See, e.g.,* Ga.Comp.R. & Regs. (State Personnel Board) r. 14.205 (1987) (appeal from dismissal). The employee, however, can appeal such a voluntary separation under Rule 14.211. That rule provides as follows:

Other Purported Violations of the Rules and Regulations. Unless prohibited by the provisions of Par. 14.111 [relating to claims of employment discrimination], a person who feels that there has been a violation of the rules and regulations or

the Merit System law which adversely affects the person's rights may appeal to the Board for relief under this provision if the appeal right is not covered elsewhere in these rules and regulations. *The appeal must be filed within thirty (30) calendar days after the occurrence of the alleged violation.*

Ga.Comp.R. & Regs. (State Personnel Board) r. 14.211 (1987) (emphasis added). Thus, the Rules did provide appellee a method by which he could have secured administrative review of his termination; appellee, however, failed to invoke this right in a timely manner. Appellee's claim, therefore, is not that he was denied the right to appeal, but rather that he was denied a right to notice of his appellate rights. I find such a claim deficient in three respects.

In the first place, the record in this case establishes that appellee, like all employees in the Georgia Merit System, was given a copy of the rules and regulations governing his employment when he was first hired. Appellee thus had actual notice of the appellate mechanisms available to him.

But even if appellee had not received actual notice, I do not believe that appellee would have a claim under the due process clause. The Rules of the State Personnel Board are a matter of public record, published and updated at regular intervals in. the Official Compilation of the Rules and Regulations of the State of Georgia. Such notice is sufficient: the due process clause does not, in itself, require that a state advise an employee of his appellate rights in a letter of termination.

Finally, I note that nothing in the Georgia Merit Systems Act gives appellee a constitutionally protected interest in such notice. That Act states as follows:

The procedure adopted for dismissing a permanent status employee from employment or otherwise adversely affecting his compensation or employment status shall include, as a minimum, that the appointing authority must provide the permanent status employee with reasons for the action and an opportunity to file an appeal and request a hearing which may be held before either the board or one of its hearing officers.

Ga.Code Ann. § 45–20–8(b) (Supp.1988). The fact that appellee's letter of termination failed to inform him of the appellate procedures available to him in no way deprived him of this "opportunity to file an appeal"—and this was the only right he had under state law.[3]

### III.

The record in this case reveals that appellee's superiors acted in an altogether deplorable manner, taking advantage of appellee's illness and adopting an unnecessarily legalistic interpretation of the rules regarding what constitutes a request for sick leave. The federal courts, however, have no power to order state officials to comply with state law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Because I find no violation of the due process right secured by the United States Constitution, I accordingly would reverse the district court's decision ordering the Georgia State Personnel Board to grant appellee a hearing concerning his termination.

---

**3.** Appellee has not alleged—nor do the facts demonstrate—that his superiors deliberately misled him, so as to prevent appellee from timely filing his appeal. *See* discussion of appellee's testimony at trial *supra* at note 2. Although Chief Hearing Officer Theus' letter to appellee stated that he had no right of appeal, this letter was written long after the thirty-day limitations period prescribed by Rule 14.212 had expired and thus did not prompt appellee to abandon

his rights. In any case, we note that Theus' letter was not inaccurate: as of the letter's date, appellee in fact had no right of appeal.

If appellant had been misled by his superiors, appellant might seek to estop the State from raising the thirty-day limitations period as a defense. For policy reasons, however, courts generally allow such estoppel only in the most exceptional circumstances. *See, e.g., Eagle v. Sullivan*, 877 F.2d 908 (11th Cir.1989).