**Homer JONES, Plaintiff,**

**v.**

**CITY OF EAST POINT, GEORGIA; Joseph Johnson, Jr., Individually and in his official capacity as City Manager of the City of East Point, Georgia; Leeman Barge, Individually and in his official capacity as a member of the Personnel Board of Appeals of the City of East Point, Georgia; Clyde Kinnett, Individually and in his official capacity as a member of the Personnel Board of Appeals of the City of East Point, Georgia; Arthur Benefield, Individually and as a member of the Personnel Board of Appeals of the City of East Point, Georgia; Olen Gunnin, individually and in his official capacity as a member of the Personnel Board of Appeals of the City of East Point, Georgia; Ann Douglas, individually and as a member of the Personnel Board of Appeals of the City of East Point, Georgia; Defendants.**

Civ. A. No. 1:90–CV–2735–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 1992.

Albert B. Wallace, Jonesboro, Ga., for plaintiff.

Beverly Holland Pritchard, Benton J. Mathis, Jr., Drew, Eckl & Farnham, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on defendants' motion for leave to file a brief in excess of the court's page limitation and defendants' motion for summary judgment. The motion to exceed the page limitation is unopposed and will be granted.

## I. MOTION FOR SUMMARY JUDGMENT

Plaintiff brings this action under 42 U.S.C. § 1983 alleging that he was wrongfully terminated from his employment with the City of East Point, Georgia, in violation of his procedural and due process rights guaranteed under the Fourteenth Amendment of the United States Constitution. Plaintiff alleges that he was not given a pre-termination hearing and challenges the validity of the post-termination appeal proceeding that resulted in a decision unfavorable to plaintiff. Defendants move for summary judgment on grounds that the undisputed facts show that plaintiff was given an adequate pre-termination and post-termination hearing and that plaintiff has failed to produce any evidence in support of his substantive due process claims.

### A. *Findings of Fact*

The following facts are undisputed[1], except where noted. At the time of his discharge, plaintiff Homer Jones was the Director of Building and Grounds for the City of East Point, Georgia. He reported directly to defendant Joseph Johnson, Jr., the City Manager of East Point. On January 2, 1990 Mark Warford, a city employee working under plaintiff's supervision, gave an affidavit to Johnson stating that plaintiff had ordered Warford to provide a personal service for East Point City Councilman Cecil Kennedy while Warford was on city time. Warford averred that he had assisted Kennedy in removing old carpet and padding from an apartment owned by Kennedy in College Park, Georgia. The task required approximately one hour.

Johnson avers that he had previously warned plaintiff to avoid the appearance of impropriety by using city employees to perform personal services. He also avers that he made plaintiff aware that doing so was grounds for dismissal. Plaintiff avers that any discussion about using city workers on

---

1. Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston,* 848 F.2d 1534, 1536 (11th Cir.1988). Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.,* at 324, 106 S.Ct. at 2553. To survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552; *Brown,* 848 F.2d at 1537.

city time to perform personal services ever occurred prior to January 1990. Further, plaintiff now denies that ordering a subordinate to perform personal services is a disciplinary violation authorizing discharge. However, in his deposition plaintiff admitted that Johnson and the City Attorney had previously warned him about using city employees to perform work for him during their off hours and generally avoiding the appearance of impropriety. He also conceded that it would be improper to direct city employees to perform personal services and non-city work.

Johnson provided a copy of Warford's affidavit to plaintiff on January 2, 1990. Plaintiff says he went to Johnson's office to find out why Warford and another employee had not been suspended when plaintiff had directed that disciplinary action be taken against them. Plaintiff admits that at that time Johnson told him that Warford had accused him of ordering Warford to do work for Councilman Kennedy.

After being given a copy of Warford's affidavit, plaintiff submitted a memorandum to Johnson dated January 3, 1990. He also sent a letter to Johnson requesting that Johnson suspend Mark Warford and another employee. He alleged that Warford had been stealing city property and was involved in drug use. Plaintiff testified that he had requested the employees' suspension prior to learning about Warford's affidavit.

Johnson and plaintiff discussed the allegations of Warford against him on the afternoon of January 4. Plaintiff testified that he met with Johnson in Johnson's office several times that day, including a five-minute meeting at the end of the working day. Johnson called plaintiff at home that evening and informed him that he was placing plaintiff on administrative leave pending the results of an investigation of the allegations in the affidavit.

Plaintiff testified that Johnson told him that the council had ordered Johnson to put him on administrative leave. Plaintiff avers that prior to being terminated, at a time when he was also responsible for licensing and inspection, he had refused to carry out

certain requests made by Johnson without a written work order. On one occasion he refused Johnson's request that a stop order issued by plaintiff concerning a private undertaking be lifted and that after the matter was referred to the mayor and the city council, the council affirmed the stop order. Plaintiff also avers that he challenged Councilman Heckstall's right to conduct unlicensed real estate, restaurant, and catering businesses from the councilman's residence. Plaintiff avers that the publicity surrounding his complaint about Councilman Heckstall was one of the real reasons for his termination. Plaintiff further avers that Johnson rejected plaintiff's recommendation that a city employee be fired on grounds that the employee had improperly disposed of building materials acquired through condemnation. Plaintiff states that the employee was discharged only after the city council conducted an investigation upon plaintiff's insistence. Plaintiff states that he had requested outside assistance to investigate the use and possession of illegal drugs by employees under his supervision. Plaintiff states that he requested assistance first in mid-1987, but Johnson took no action until twenty city employees were arrested after plaintiff had been terminated.

On January 5, 1990 Johnson interviewed all of the employees working under plaintiff in the Building and Grounds Department. Johnson's investigation uncovered additional evidence to support the allegations in Warford's affidavit. Plaintiff's employees told Johnson that plaintiff had used city employees on city time to perform personal services for plaintiff on other occasions, that plaintiff verbally abused his employees on a regular basis, and that plaintiff showed favoritism to certain employees. Some employees told Johnson that they would quit if Johnson allowed plaintiff to return to work.

Plaintiff met with Johnson and the East Point City Attorney, Tony Edison, on Monday, January 8, 1990, for approximately one and one-half hours. Plaintiff characterizes this meeting as a "chance encounter" after he ran into Johnson and Eidson

in front of a bank in East Point. Plaintiff avers that he came to East Point to help set up for a seminar and to inquire why he was still on administrative leave, not to meet with Johnson and Eidson. At his deposition, plaintiff testified that Johnson and Eidson agreed to meet with him on plaintiff's insistence.

Plaintiff now denies that there was any "proposed termination" discussed during the meeting but avers that he was threatened with the possibility of criminal prosecution if he did not resign. However, in his deposition plaintiff admitted that he understood that Johnson and Eidson were trying to persuade him to resign in lieu of being fired and that Eidson and Johnson had concluded that plaintiff's employment with the city should be terminated. Plaintiff testified, "The main consensus of that meeting was that they were going to conduct an investigation, and I was told by Tony Eidson that I had better resign, because I could not stand the investigation, that they were going to dig up something on me to terminate me."

In his deposition plaintiff admitted that the parties discussed the allegations against him, including those in Warford's affidavit. He was also informed that other allegations had been made by his subordinates during the investigation. Plaintiff admitted that there was a general discussion about the complaints of favoritism by his employees. In his affidavit submitted in opposition to the motion for summary judgment, plaintiff avers that "there were no discussions as to any named employee about discrimination, disfavor, or other preferable treatment shown to any employee...." However, at his deposition he admitted that there was discussion concerning at least one incident of alleged racial favoritism. Defendants ask the court to disregard plaintiff's affidavit as a sham affidavit because it directly contradicts his deposition testimony.

Plaintiff has admitted that he was given opportunity to respond to each of the allegations discussed. During the meeting Johnson called Councilman Kennedy and put him on the speaker phone and asked him about the incident alleged in Warford's affidavit. Kennedy denied the incident although Johnson maintains that he had previously admitted it to Johnson.

On January 17, 1990 Johnson sent plaintiff written notice that plaintiff's employment was being terminated "for abusive use of your official position and for conduct unbecoming your position as head of the Buildings and Grounds Department of the City of East Point, in violation of section 4–213 of the Charter of the City of East Point." The specific allegations of misconduct in the letter included: (1) the incident described in Warford's affidavit; (2) that plaintiff had used city employees and city equipment on city time to remove rubbish and debris from plaintiff's own property; (3) that plaintiff directed a city employee on city time to spray herbicide on property owned by Councilman Kennedy; (4) that plaintiff had coerced city employees to work on plaintiff's home during their off hours ("You imposed subtle coercion upon these employees to not only perform the work, but to accept whatever wage you chose to pay for their services"); (5) that plaintiff "directed [Warford] to obtain a roll of plastic garbage bags from a dispensary at city hall and to deliver these to the home of a private citizen in East Point" while Warford was on city time; and (6) that plaintiff used a city vehicle on city time to drive Warford to plaintiff's home in Henry County to show Warford the new home. The letter informed plaintiff of his right to appeal Johnson's decision to the East Point Personnel Board of Appeals "composed of the Mayor and the four (4) senior members of the council."

The one incident of favoritism identified in the notice of termination concerned plaintiff's failure to obtain a uniform for a black employee when he promptly obtained a uniform for a white employee. Plaintiff avers that he was unable to secure the uniforms for employees at the time because of a dispute between the uniform supply company and the city manager and city purchasing agent.

On February 6, 1990, Johnson sent Jones a second letter informing him that his on-

going investigation had revealed another incident of alleged misconduct. Johnson stated that one of plaintiff's employees had informed Johnson that plaintiff had instructed him to repair a fence at Councilman Kennedy's personal residence and to take whatever materials he needed from the city, including chain link fencing. Johnson stated, "Although this work was done on off-duty time, it was initiated pursuant to your instruction and permission for the use of City materials." Johnson stated that this additional information would be used by the city in support of its termination of plaintiff for abuse of his official position and conduct unbecoming his position.

On January 26, 1990 John E. Talmadge, Eidson's partner, sent plaintiff's counsel a letter identifying the witnesses the city might call. However, Talmadge did not identify the substance of expected testimony by the witnesses, nor were addresses or telephone numbers provided. Talmadge informed plaintiff that the Personnel Board of Appeals generally consisted of the mayor and four senior members of the council, but that Cecil Kennedy, who was identified as a witness, was ineligible and would not sit on the panel.

The Personnel Board of Appeals convened on February 13, 1990 at 6:00 p.m. Earlier that same day, attorney Talmadge served plaintiff with a list of persons "believed to be in possession of knowledge concerning Homer Jones's abuse of his official position; intimidation of employees; requesting special favors and personal work for his own benefit." The city moved to recuse Mayor Bruce Bannister on grounds that Bannister had communicated with plaintiff concerning the merits of the case, that he had expressed bias and prejudice, and that he was a plaintiff in a lawsuit pending against the city.

Council members sitting on the board included, in addition to the mayor, Councilman Arthur Benefield, Olen Gunnin, Clyde Kinnett, and Joseph Heckstall. Mayor Bannister recused himself from the board while the members considered the city's motion to disqualify him. The senior member of the board, Councilman Heckstall, recused himself from assuming the chair of the panel during consideration of the motion to disqualify because plaintiff had moved to disqualify him. Councilwoman Ann Douglas presided during consideration of the motion to disqualify the mayor. Councilman Benefield sat as a member of the board in place of the mayor during the proceedings on the motion to disqualify the mayor. The board as constituted voted unanimously to disqualify the mayor from presiding.

The board then considered the city's motion to disqualify Councilman Kennedy. Councilman Kennedy recused himself for purposes of consideration of the motion and was replaced by Councilman Barge. Councilman Kennedy volunteered to step down if both sides wished him to, but plaintiff's counsel objected. The board voted unanimously to recuse Councilman Kennedy. Councilman Heckstall, whom plaintiff had moved to disqualify, voluntarily recused himself.

The board that heard plaintiff's appeal consisted of Councilman Barge, Councilman Gunnin, Councilwoman Douglas as presiding officer, Councilman Kinnett, and Councilman Benefield. The panel recessed its proceedings due to time constraints. Further testimony was taken February 14 and 15.

Between February and June of 1990, the parties engaged in settlement discussions. The panel reconvened the proceedings on June 4, 1990. Plaintiff moved to terminate the proceedings on grounds that all members of the panel should be disqualified. Plaintiff argued that the panel members' knowledge of the settlement discussions, gained by virtue of their positions on the city council, biased them and mandated their disqualification from the board. Plaintiff contended that since there were no unbiased council members who could constitute an impartial tribunal, he should be reinstated. The board overruled the motion to disqualify and resumed the taking of evidence.

At the conclusion of the proceedings, the board was given three standard forms

from which they were to choose one to record their findings. After further review of the evidence, the Personnel Board of Appeals issued its finding on June 5, 1990. The decision form states, "The employee having been recommended for disciplinary action for cause as determined by the city manager, the same is found to be appropriate under the circumstances of this case and the punishment as recommended is hereby imposed." Plaintiff filed the instant action on December 7, 1990.

Count one of the complaint alleges that plaintiff was denied his procedural due process rights because he was "afforded no pretermination hearing, and was given no opportunity to respond to any claims made by defendant JOHNSON in his letter of termination other than by appeal to the Personnel Board of Appeals of the CITY OF EAST POINT." Plaintiff maintains he was denied the opportunity to respond to the proposed termination because he never received any written notice prior to receiving actual notice of his termination. He claims he was "denied the opportunity for effective rebuttal and to respond in writing to any charges thought to exist in the mind of the City Manager and was likewise denied the opportunity to respond before the official charged with making the decision, namely JOE JOHNSON." Plaintiff also claims he was denied his procedural due process rights because defendant Johnson conducted his investigation and interviewed disgruntled employees without allowing plaintiff to be present.

Plaintiff further alleges that his procedural due process rights were violated because the appeals board as constituted was not an impartial tribunal since the members had participated in the hiring of defendant Johnson, the person who was seeking plaintiff's termination. Plaintiff alleges that the members of the board were aware of offers and counter-offers to settle and notes the denial of his motions and objections. However, plaintiff does not state how these facts constituted violations of his procedural due process rights.

Plaintiff complains that the additional reasons and grounds for termination identified in Johnson's February 6, 1990 letter to plaintiff were not relied on by Johnson when he made his original decision to terminate plaintiff and should not have been considered by the appeals board. Plaintiff also objects to the failure to give him notice of the name, address and subject matter of the testimony of possible adverse witnesses.

Finally, plaintiff alleges that city employees under Johnson's supervision falsely reported to the public that plaintiff was guilty of wrongdoing, causing plaintiff to suffer irreparable injury to his feeling and reputation and standing in the community, impairing his ability to earn a living. He claims that defendants' actions have caused him "severe emotional distress in the form of frustration, anger, embarrassment, and general deprivation." Plaintiff alleges that defendants' conduct was intentional and deliberate, authorizing an award of punitive damages against the defendants in their individual capacity.

In count two of the complaint plaintiff alleges that his substantive due process rights were violated by defendants. He alleges that his termination was "for an improper motive inspired and carried out specifically by defendant JOE JOHNSON." Plaintiff claims that the proffered reasons for his termination were pretextual and that Johnson's decision was, therefore, arbitrary and capricious. Plaintiff argues that "the pretended grounds and the pretended hearing were willful and deliberate such as to authorize punitive damages against each of the individual defendants."

Plaintiff seeks reinstatement to his position as head of the Department of Building and Grounds for the City of East Point, lost wages, general damages for physical and emotional suffering, punitive damages, and costs and attorney's fees.

B. *Controlling Law*

Defendants move for summary judgment under count one on grounds that plaintiff was given sufficient pre-termination notice of the charges against him and that the personnel board hearing afforded plaintiff sufficient due process. Defendants move

414

for summary judgment under count two on grounds that plaintiff has failed to present any evidence that his substantive due process rights were violated. Plaintiff responded to the motion by arguing that disputes of fact remain as to whether he was given a sufficient pre-termination hearing, whether the personnel board was properly constituted and impartial, whether plaintiff was given sufficient pre-termination notice of the additional charges made after the notice of termination, and whether plaintiff's proposed termination "was the direct result of a conspiracy on behalf of defendant JOHNSON and others to remove the plaintiff because he had embarrassed the CITY administration by pointing out wrongful acts of its employees, as well as one of its elected officials." No allegations of conspiracy were raised in the complaint. Plaintiff avers that the councilmen who directed Johnson to fire him were the same councilmen who constituted the personnel board.

### 1. *Procedural Due Process Claims*

■ A plaintiff may bring a cause of action under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution alleging that the defendant, acting under color of state law, has deprived the plaintiff of a constitutionally protected interest in life, liberty or property. *Wofford v. Glynn Brunswick Memorial Hospital*, 864 F.2d 117, 118 (11th Cir. 1989); *Baxter v. Fulton–DeKalb Hosp. Auth.*, 764 F.Supp. 1510, 1518 (N.D.Ga. 1991). "In Georgia a public employee who can only be dismissed for cause has a legitimate claim to a property interest in continued employment." *Baxter*, 764 F.Supp. at 1518 (citing *Nolin v. Douglas County*, 903 F.2d 1546, 1553 (11th Cir.1990) and *Wofford*, 864 F.2d at 119). The parties agree that plaintiff had a vested interest in continued employment with the City of East Point and could only be dismissed for cause. Therefore, plaintiff could be de-

prived of his employment only if he was afforded due process of law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

■ Under the Due Process Clause of the Fourteenth Amendment, an employee with a property right in continued employment must be given pre-termination notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *Adams v. Sewell*, 946 F.2d 757, 764 (11th Cir.1991). In *Loudermill*, the Supreme Court stated that a "pre-termination 'hearing,' though necessary, need not be elaborate." 470 U.S. at 546, 105 S.Ct. at 1495. Cursory or abbreviated pre-termination proceedings are sufficient if the employee receives a full and fair hearing within a reasonable time after termination. *Adams v. Sewell*, 946 F.2d at 765 (citing *Loudermill*, 470 U.S. at 546–47, 105 S.Ct. at 1495–96); *Kelly v. Smith*, 764 F.2d 1412, 1415 (11th Cir.1985). Under *Loudermill*, it is clear that *oral* notice and an opportunity to respond *orally* is sufficient process in a pre-termination context. *Kelly v. Smith*, 764 F.2d at 1414.[2]

■ Pre-termination hearings "need not definitively resolve the propriety of the discharge," but serve only as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action," *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495; *Kelly v. Smith*, 764 F.2d at 1415. An employee must be given opportunity to state his case before a person charged with the responsibility of making the termination decision. *Kelly v. Smith*, 764 F.2d at 1414. The employee's pre-termination procedural due process rights are not violated if that decision-maker has "reasonable grounds to be-

2. In *Loudermill* the Court stated,
The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, *either in person or in writing*, why a proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to *oral or written notice* of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.
470 U.S. at 546, 105 S.Ct. at 1495.

lieve that the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 547, 105 S.Ct. at 1496. Plaintiff was given several opportunities to respond to the allegations in Warford's affidavit. The record indicates that he responded both orally and in writing to defendant Johnson, the person charged with the responsibility for making the termination decision.

The court need not determine whether the discussions between plaintiff and Eidson and Johnson were the result of a chance meeting. That meeting was only one of several occasions on which plaintiff was given opportunity to respond to the allegations against him. The affidavit and the results of Johnson's investigation gave Johnson reasonable grounds to believe that plaintiff had abused his official position and engaged in conduct unbecoming his office in violation of East Point City Code section 4–213.[3]

■ The February 6 letter from defendant Johnson to plaintiff stating that the city would introduce evidence of the weed-spraying incident as additional grounds for terminating plaintiff did not entitle plaintiff to an additional pre-termination hearing. First, plaintiff was already terminated and, therefore, a second pre-termination "hearing" was impossible. Second, the alleged incident was not so much a new charge as it was further evidence in support of defendants' position that plaintiff had violated East Point City Code section 4–213. Finally, any deficiency in the pre-termination proceedings was cured by the availability of a full and fair hearing after plaintiff's termination. *Adams v. Sewell,* 946 F.2d at 765.

The due process requirements for post-termination proceedings, especially where pre-termination proceedings were cursory, are much more stringent. After termination, an employee is entitled to a full evidentiary hearing "with an opportunity to present his case and cross-examine the witnesses against him in an impartial forum." *Adams,* 946 F.2d at 765; *Kelly,* 764 F.2d at 1415.

■ However, Georgia law gives public employees the right to petition the state superior courts for review of employment decisions made by county and municipal civil service and personnel boards. *See* O.C.G.A. § 5–4–1, *et seq.; Lee v. Hutson,* 810 F.2d at 1031); *Baxter,* 764 F.Supp. at 1519.

[W]here a state's procedures governing the taking of property are not fundamentally unfair on their face, and where an adequate remedy exists under state law to correct alleged errors in the administration of those procedures, there can be no deprivation without procedural due process because all process 'due' has been afforded.

*Lee v. Hutson,* 810 F.2d 1030, 1031 (11th Cir.1987); *Guntharp v. Cobb County, Georgia,* 723 F.Supp. 771, 778 (N.D.Ga. 1989). The availability of this certiorari procedure forecloses procedural due process claims based on the sufficiency of evidence, the alleged bias of the panel or board, and the failure to make findings of fact. *Lee v. Hutson,* 810 F.2d at 1031, 1033.

Under *Lee v. Hutson,* plaintiff's procedural due process claims arising from the proceedings before the personnel board fail to state a cause of action. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.... The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood,* 426 U.S. 341, 349–50 and n. 13, 96 S.Ct. 2074, 2079–80 and n. 13, 48 L.Ed.2d 684 (1976). "It is not the role of a federal district court to act as a court of appeal from decisions of state quasi-judicial bodies where the state has

3. Section 4–213 provides:
All officers and employees of said city shall be subject to discharge or removal from their connection with the city for drunkenness, dishonesty, failure to perform their duties, immoral or indecent conduct, or oppressive or abusive use of official position or power, or other conduct unbecoming their station, office or position.

provided avenues of appeal which the litigant did not utilize." *Lee v. Hutson,* 600 F.Supp. 957, 966 (N.D.Ga.1984). All defendants are entitled to summary judgment on count one of the complaint.

## 2. *Substantive Due Process Claims*

The substantive element of the Fourteenth Amendment's due process clause is violated by state conduct that is so egregious that it "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985) (en banc). "[N]ot every wrong committed by a state actor rises to the level of a constitutional tort sufficient to trigger a substantial due process violation." *Lee v. Hutson,* 810 F.2d at 1032. "Unlike procedural due process claims which challenge the adequacy of the procedures used by the government in deciding how to treat individuals, substantive due process claims allege that certain governmental conduct would remain unjustified even if it were accompanied by the most stringent of procedural safeguards." *Gilmere,* 774 F.2d at 1500.

■ A public employee's substantive due process rights are violated when his employment is terminated "for an improper motive and by means that were pretextual, arbitrary and capricious, and, because unrelated to the proper reasons for layoff, without any rational basis." *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982); *see also Adams v. Sewell,* 946 F.2d at 764; *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571, 1577 (11th Cir. 1983); *Faucher v. Rodziewicz,* 891 F.2d 864 (11th Cir.1990); *Baxter,* 764 F.Supp. at 1520. A plaintiff alleging that the decision to terminate him was pretextual, arbitrary and capricious has "alleged more than a simple deprivation of a state created property interest"—he has alleged that the government has engaged in unconscionable conduct. *Baxter,* 764 F.supp. at 1520.

■ The only evidence plaintiff has produced in support of his claim that the reasons given for his termination were pretextual is that 1) defendant Johnson told him that members of the council had ordered

him to fire plaintiff, 2) that plaintiff and Johnson had disagreements in the past, and 3) that plaintiff had embarrassed Councilman Heckstall and the city through plaintiff's "whistle-blowing" activities. However, plaintiff has failed to produce any evidence that connects these incidents with the personnel board's decision to uphold Johnson's decision to terminate plaintiff.

The alleged direction to defendant Johnson to fire plaintiff came close on the heels of the new allegations by Warford. Plaintiff has produced no evidence that the personnel board's decision was based on anything other than the evidence presented to the board. As noted above, allegations of bias by the panel are procedural due process claims. *Lee v. Hutson,* 810 F.2d at 1031, 1033. There is no evidence that the panel's decision was so arbitrary that it constitutes a substantive due process violation. Therefore, all defendants are entitled to summary judgment on count two of the complaint.

## C. *Qualified Immunity*

Having determined that no violation of plaintiff's constitutional rights occurred, the court need not decide whether defendants are entitled to qualified immunity.

## II. CONCLUSION

Georgia's state law provision for review of the personnel board's decision through certiorari to the county superior court satisfies the requirements of procedural due process. Plaintiff has failed to produce any evidence that Johnson's decision to terminate him and the board's decision to uphold his termination were arbitrary, capricious or pretextual. Therefore, defendants' motion for summary judgment [16–1] is GRANTED. Defendants' motion for leave to file a brief in excess of the court's page limitation [15–1] is unopposed and is also GRANTED. The Clerk of Court is DIRECTED to enter judgment in favor of all defendants and DISMISS this case.

SO ORDERED.