Clay HUNTER, Plaintiff,

v.

CITY OF WARNER ROBINS, GEORGIA, et al., Defendants.

Civ. A. No. 93–86–2–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 4, 1994.

1462

Paul L. Cames, Warner Robins, GA, for plaintiff.

J. Lewis Sapp, Karen E. Woods, Atlanta, GA, for defendants.

## ORDER

OWENS, Chief Judge.

Before the court is defendants' motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Plaintiff Clay Hunter is a firefighter/EMT employed by defendant City of Warner Robins, Georgia. In May 1991, various firefighters, including plaintiff, were ranked by an assessment center as candidates for promotion to the position of fire engineer. Plaintiff placed third on this list. Subsequently, the first two firefighters on the list received promotions to the position of fire engineer. In the fall of 1991, a third fire engineer position became available. Plaintiff, now at the top of the assessment list, was the next eligible candidate for promotion.

On October 31, 1991, defendant Larry West, Chief of the Warner Robins City Fire Department, wrote Catherine Silengo, the city personnel director, requesting that plaintiff be promoted to the position of fire engineer, effective November 11, 1991. Chief West, however, did not inform plaintiff that the promotion request had been sent to Silengo.

On November 6, 1991, plaintiff reported late for duty. Because plaintiff had also reported late for duty a month earlier, Assistant Chief Kenneth Fennell wrote Chief West and informed him of the two offenses.[1] Fennell also informed Chief West that plaintiff had not provided a valid excuse for either occurrence. On November 6, 1991, plaintiff received a written reprimand from Chief West. On November 7, 1991, Chief West wrote Catherine Silengo and informed her that plaintiff's assessment grade would be reduced one point for the two tardiness offenses. In accordance with the point reduction, Chief West recommended that another firefighter be promoted to the available fire engineer position, effective November 11, 1991.

Pursuant to the personnel rules of the City of Warner Robins, plaintiff filed a formal grievance with Chief West. Plaintiff asserted in the grievance that Chief West did not have the authority to reduce the assessment grade once the grade had been achieved. On November 20, 1991, Chief West responded to plaintiff's grievance:

> You allege that the Fire Department can not "reduce your point total after the point total has been achieved." There is absolutely nothing in the regulations of the Fire Department which would preclude doing this. With regard to your position on the engineer assessment list, you were in a superior position to another employee at the time the list was made on May 10, 1991. However, when your personnel file was reviewed from the date of the assessment up to the date of promotion, it was discovered that you had a letter of reprimand in your personnel file subsequent to the date of the assessment center. When the engineer assessment rating was reviewed, and your personnel file then reviewed, this disciplinary action resulted in your being surpassed on the rating list. There is absolutely nothing that prohibits me from taking into account subsequent disciplinary actions when making a promotion.

After receiving the response from Chief West, plaintiff contacted Catherine Silengo and requested information as to the next step in the grievance procedure. Accordingly, on December 5, 1991, Silengo met with plaintiff and Chief West to discuss the grievance. On December 12, 1991, Silengo wrote plaintiff and informed him of her findings and recommendations. In her findings, Silengo noted:

> Mr. Hunter indicates he was unaware of the exact disciplinary procedure regarding tardiness. Although Mr. Hunter knew tardiness to be a serious offense, he was unaware it would effect his standing on the Assessment Center. The Assessment was run in May, 1991, and a ranking list was posted at that time. There were no provisions stated for altering the list once it was posted.

Further, "Chief West indicates a tardiness policy was posted in 1988, but employees were not given copies or requested to sign for copies. He updated this policy in 1989, reducing the penalties and a copy was only given to the Chiefs." However, despite the above findings, Silengo agreed with Chief West's decision not to promote plaintiff. In her recommendations, Silengo wrote:

> I concur with Chief West's decision to delay promoting someone due to recent disciplinary actions. Chief West was consistent in following previous procedure within the Fire Department and Police Department. Although the procedure to amend the Assessment lists has been done in both the Police and Fire Departments, this procedure is not in writing.

---

1. According to defendants, at the time of the tardiness offenses, the Warner Robins Fire Department had a tardiness policy in effect. Under the policy, a first offense is punishable by a verbal reprimand. A second offense requires a written reprimand and a warning of suspension in the event of a third offense. A third offense results in a three-day suspension and a warning of termination for a fourth offense. The fourth offense results in termination.

The letter also informed plaintiff that he could appeal the findings and recommendations to an Administrative Law Judge ("ALJ").

On December 13, 1991, plaintiff informed Silengo that he was appealing her findings and recommendations. On January 15, 1992, a hearing was held before an ALJ. At the hearing, plaintiff, through counsel, testified on his own behalf, presented evidence, and cross-examined all adverse witnesses. On February 7, 1992, the ALJ issued a written order. In the order, the ALJ made the following conclusions:

1. A promotion is not effective until the requisite departmental head advises the employment candidate that he or she has been promoted; therefore Clay Hunter was never promoted.

2. Even though it is widely known in the fire department that tardiness is a serious offense it was not properly conveyed to Clay Hunter that two tardies in one year would warrant written reprimand; consequently, I order that the reprimand be removed from Clay Hunter's personnel file.

. . .

4. I further order that specific reprimand policy relative to "Lates" be submitted to all fire department employees in writing . . . or in the alternative this specific reprimand policy should be rescinded and notice should be given to all fire department employees that reprimand shall be in the discretion of the supervisory personnel within the department.

Plaintiff was also informed that he could request a review of the ALJ's decision by the mayor and city council.

On February 20, 1992, plaintiff, through counsel, appealed the ALJ's decision to the mayor and city council. In his appeal, plaintiff contended that the ALJ was in error in finding that he had not been promoted. Plaintiff asserted that the ALJ also erred by not requiring the fire department to promote plaintiff. On April 20, 1992, the mayor and city council voted in session to uphold the decision of the ALJ.

▮ On March 15, 1993, plaintiff filed suit in this court under 42 U.S.C. § 1983. Plaintiff contends the actions of defendants violated his right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. Subsequently, defendants filed a motion for summary judgment. Defendants contend: (1) that the findings of fact issued by the ALJ are entitled to preclusive effect; (2) that plaintiff has failed to establish a procedural due process violation; (3) that plaintiff has failed to establish a substantive due process violation; and (4) that defendant West is entitled to qualified immunity.[2]

### DISCUSSION

[T]he plain language of [Federal Rule of Civil Procedure] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.

2. On July 12, 1993, defendants served on plaintiff nine requests for admissions. On September 14, 1993, plaintiff responded to defendants' requests. Defendants assert that because plaintiff failed to timely respond to their requests for admission, the requested admissions are deemed admitted. Rule 36(a) of the Federal Rules of Civil procedure provides: "The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection ad-dressed to the matter . . . ." Fed.R.Civ.Pro. 36(a). On July 13, 1993, the court sent to counsel a letter informing counsel of the need for a discovery conference and asked counsel to postpone the taking of any depositions until the conclusion of the conference. Plaintiff contends that this letter stayed *all* discovery in the case. The letter, however, clearly refers only to depositions. Nonetheless, defendants have suffered no prejudice as a result of the delayed response and the court will not, in the face of an apparent miscommunication, deem the requests admitted.

1990). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *United States v. Metropolitan Petroleum co.*, 743 F.Supp. 820, 823 (S.D.Fla.1990).

## I. Issue Preclusion

Defendants' contend that plaintiff may not relitigate any factual issues actually decided in his grievance proceeding before the ALJ. In particular, defendants assert that the ALJ's finding that plaintiff was not promoted is entitled to issue preclusive effect.

 "[W]hen a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986); *see also Gjellum v. City of Birmingham*, 829 F.2d 1056, 1070 (11th Cir.1987). Therefore, before a federal court may look to state law to determine if agency factfinding is entitled to preclusive effect, three conditions must be met: "(1) the agency must be performing a judicial function, (2) the parties must have had a adequate opportunity to litigate the issues and (3) the issues must be properly before the agency." *Nix v. Hardison*, 712 F.Supp. 185, 188 (N.D.Ga.1989). If these factors are met, the court must then look to state law to determine the preclusive effect accorded the agency factfinding. *See Elliott*, 478 U.S. at 799, 106 S.Ct. at 3226; *Gjellum*, 829 F.2d at 1070; *Nix*, 712 F.Supp. at 188. The courts of the State of Georgia give issue preclusive effect to agency factfinding under the traditional guidelines of collateral estoppel. *See Blackwell v. Georgia Real Estate Commission*, 205 Ga.App. 233, 421 S.E.2d 716 (1992); *Hunter v. State*, 191 Ga.App. 769, 382 S.E.2d 679 (1989).

In Georgia, the prerequisites to the application of the doctrine of issue preclusion are: (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in the earlier action.

*Nix*, 712 F.Supp. at 188.

### A. Federal Prerequisites

As discussed above, before this court may look to state law to determine if the ALJ's factfinding is entitled to preclusive effect, three conditions must be met: (1) the agency must be performing a judicial function, (2) the parties must have an adequate opportunity to litigate the issues, and (3) the issues must be properly before the agency.

 First, was the ALJ performing a judicial function? The hearing before the ALJ involved the testimony of witnesses, the presentation of physical evidence, and the arguments of counsel. In addition, the ALJ acted as a finder of fact and law, and issued a written order detailing his conclusions. Therefore, the facts clearly indicate that the ALJ was performing a judicial function.

Second, plaintiff, through counsel, testified, presented evidence, and cross-examined adverse witnesses. These facts indicate that plaintiff was given an adequate opportunity to litigate the "promotion" issue before the ALJ.

Finally, was the "promotion" issue properly before the ALJ? The first paragraph of the ALJ's order states:

A hearing was held ... pursuant to an appeal filed by Clay Hunter of a grievance dealing with his employment with the Warner Robins Fire Department. The basis of Clay Hunter's grievance was that he had been passed over for promotion to Engineer status or demoted therefrom as a result of two tardinesses to work subsequent to the most recent assessments for the aforesaid promotion.

In order to address the issues raised by plaintiff in his appeal to the ALJ, it was necessary for the ALJ to decide whether plaintiff had been promoted to the fire engineer position. Therefore, the "promotion" issue was properly before the ALJ.

## B. State Preclusion

Before preclusive effect can be given to the ALJ's factfinding, this court must find: (1) that the issue before this court is identical to the issue that was before the ALJ; (2) that the issue was actually litigated before the ALJ; and (3) that the determination of the issue was necessary to the prior judgment. Plaintiff apparently concedes that the "promotion" issue was actually litigated before the ALJ. (Pl.'s Resp.Br. at 4.) Further, as discussed above, the "promotion" issue was necessary to the ALJ's ultimate conclusions. Plaintiff, however, contends that the issue before this court is not the same issue that was before the ALJ. In plaintiff's brief in response to defendants' motion for summary judgment, plaintiff states: "The issue to be determined by this Court is whether the Plaintiff was demoted, not whether or not he was promoted, as decided before the Administrative Law Judge." (Pl.'s Resp.Br. at 4.) Plaintiff's contention is without merit. Clearly, this court could not find that plaintiff was demoted from the fire engineer position without first finding that he was promoted to the position. As plaintiff had adequate opportunity and motive to litigate the issue before the ALJ, this court will give preclusive effect to the ALJ's finding that plaintiff was not promoted to the position of fire engineer. Accordingly, defendants's motion for summary judgment on the preclusive effect of the ALJ's factfinding is **GRANTED**.

## II. Procedural Due Process

Plaintiff contends that defendants have violated his procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution. "A plaintiff may bring a cause of action under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution alleging that the defendant ... has deprived the plaintiff of a constitutionally protected interest in life, liberty or property." *Jones v. City of East Point,* 795 F.Supp. 408, 414 (N.D.Ga.1992). A person may be deprived of a protected property interest only if afforded due process of law. *Jones,* 795 F.Supp. at 414. A procedural due process analysis requires a two-part inquiry: (1) has the plaintiff been deprived of a protected

property interest; and (2), if so, was due process accorded. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *see also Bailey v. Board of Commissioners,* 956 F.2d 1112, 1122 (11th Cir.1992) and *Woodruff v. United States,* 954 F.2d 634, 641 (11th Cir.1992).

"The existence of a legitimate claim of entitlement to a property interest ... is to be determined in accordance with state law." *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir.1987); *see also Nolin v. Douglas County,* 903 F.2d 1546, 1553 (11th Cir. 1990); *Wofford v. Glynn Brunswick Memorial Hospital,* 864 F.2d 117, 119 (11th Cir. 1989). "The acquisition of a Fourteenth Amendment property interest with accompanying procedural due process requires more than a unilateral expectation; there must be a legitimate claim of entitlement." *Adams v. Bainbridge–Decatur County Hospital Authority,* 888 F.2d 1356, 1363 (11th Cir.1989); *see also Nolin,* 903 F.2d at 1553; *Wofford,* 864 F.2d at 119. In general, the existence of a property right in an aspect of public employment "is made by reference to laws, regulations, or personnel policies." *Nolin,* 903 F.2d at 1553. A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing that a protected property interest exists. *Id.* at 1554.

If a plaintiff establishes that a protected property interest exists, "the process due in abridging [that] right[ ] is governed by federal law." *Wofford,* 864 F.2d at 118; *see also Harris v. Birmingham Board of Education,* 817 F.2d 1525, 1527 (11th Cir. 1987). Therefore, once a property right has been identified, the court must determine whether due process was accorded. *Nicholson,* 816 F.2d at 598. The essential elements of due process are notice and an opportunity to be heard. *Id.* Procedural due process, however, does not mandate a particular result, only a constitutionally adequate procedure. Accordingly, "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill advised personnel decisions." *Lee v. Hutson,* 810 F.2d 1030, 1032 (11th Cir.1987).

## A. Property Interest

Plaintiff contends that a protected property interest existed in his position as a fire engineer, and that his demotion from that position constituted a deprivation of his property interest without due process of law. However, the ALJ found that plaintiff had not been promoted to the position of fire engineer. As the court has already held, the ALJ's finding precludes a relitigation of the "promotion" issue. Therefore, the court must determine whether a protected property interest can exist in a prospective promotion.

■ In general, " 'a prospective promotion is not a property or liberty interest protected by the fourteenth amendment.' " *Cohilas v. Clayton County Board of Commissioners,* 206 Ga.App. 134, 136, 424 S.E.2d 651, 653 (1992). Only if the promotion to a specific position is a matter of right under the governing substantive law, will a protected property interest exist. *Atkinson v. City of Roswell,* 203 Ga.App. 192, 196, 416 S.E.2d 550, 553 (1992). However, a recommendation for promotion does not create a protected property interest when the promotion does not exist as a matter of right. *Horne v. Skelton,* 152 Ga.App. 654, 660, 263 S.E.2d 528, 533 (1979).

■ It is plaintiff's burden to put forth some evidence to indicate that the assessment list created a vested right in a promotion. Plaintiff, however, has not met this burden. Further, even assuming that plaintiff was promoted to fire engineer, plaintiff has failed to establish that the position created a vested property right. The general rule in Georgia is that a public employee has no vested right to public employment. *Ogletree v. Chester,* 682 F.2d 1366, 1369 (11th Cir. 1982). It is plaintiff's burden to establish that an exception to this rule exists. Plaintiff has failed to do so.

## B. Sufficiency of the process

■ The court's holding that no protected property interest exists is fatal to plaintiff's procedural due process claim. Assuming, however, that a protected property right did exist, the second step of the procedural due process analysis requires the court to determine whether the grievance procedure of the City of Warner Robins meets the due process requirements of the Fourteenth Amendment. The City of Warner Robins' grievance procedure involved a full quasi-judicial hearing, three different levels of appeal, and the involvement of counsel. As noted above, the Due Process Clause of the Fourteenth Amendment is not a guarantee against an "incorrect or ill advised personnel decision[ ]." *Lee,* 810 F.2d at 1032. A procedural due process analysis examines the adequacy of the procedures, not the adequacy of the result. The procedures afforded plaintiff by the City of Warner Robins more than satisfied the due process mandate of the Fourteenth Amendment.[3] Accordingly, defendants' motion for summary judgment on plaintiff's procedural due process claim is **GRANTED.**

### III. Substantive Due Process

Unlike procedural due process claims, which challenge the adequacy of the procedures used by the government in deciding how to treat individuals, substantive due process claims allege that certain governmental conduct would remain unjustified even if it were accompanied by the most stringent of procedural safeguards. *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1500 (11th Cir.1985). As with a procedural due process analysis, the court must first determine if the plaintiff has been deprived of a protected property interest. *Nolin,* 903 F.2d at 1553. If a protected property interest exists, the court must then look to federal law to ascertain whether the substantive due process rights of the plaintiff have been vio-

3. Official Code of Georgia Annotated ("O.C.G.A.") §§ 5–4–1 *et seq.* provide a certiorari procedure for the correction of errors committed in judicial and quasi-judicial proceedings. Although "exhaustion of state remedies is not required in section 1983 actions ... the availability of state procedures is important in ascertaining whether due process is available." *Lee,* 810 F.2d at 1033. Although plaintiff's failure to pursue this additional state remedy would not bar his federal cause of action, neither does it prevent this court from examining the extent and adequacy of the state procedures available to plaintiff for constitutional purposes.

lated. "A violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a ' "property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious," ' regardless of whether or not a hearing was held." *Id.* at 1553–54.[4]

As with plaintiff's procedural due process claim, the absence of a protected property right also effectively ends the substantive due process analysis. Even if this court were to assume that a protected property right did exist, plaintiff has failed to put forward any evidence that any defendant acted in a manner inconsistent with the requirements of substantive due process. Plaintiff merely alleges that defendants deprived him of his protected property right for an improper purpose, and by means that were pretextual, arbitrary and capricious. However, this allegation, unsupported by reference to the record, is insufficient to meet plaintiff's burden. Accordingly, defendants' motion for summary judgment on plaintiff's substantive due process claim is **GRANTED.**

### IV. Qualified Immunity

The Eleventh Circuit Court of Appeals has adopted an objective-reasonableness test for determining whether a government official is entitled to qualified immunity.[5] *See Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991); *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). "The objective-reasonableness test provides qualified immunity protection to 'all but the plainly incompetent or those who knowingly violate the law.' " *Courson,* 939 F.2d at 1487. "Eligibility for this immunity is determined

on an objective basis and not on the basis of the officer's subjective beliefs." *Acoff v. Abston,* 762 F.2d 1543, 1549 (11th Cir.1985).

The objective reasonableness test involves a two-step process. First, the defendant must show that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Courson,* 939 F.2d at 1487. If the defendant is able to meet this burden of production, the burden then shifts to the plaintiff to show that the defendant's actions violated clearly established constitutional law. *Id.* The second prong of the test is further divided into two subparts. First, the court must determine if the applicable law was clearly established at the time the action occurred. *Id.* at 1487–88. Second, if the law was clearly established, the court must determine if there is a genuine issue of material fact concerning whether defendant violated this law. *Id.* at 1488. Under this analysis, the defendant is entitled to qualified immunity if either (1) the law was not clearly established, or (2) the law was clearly established but the defendant did not violate the law. *Id.* n. 14.

#### A. Scope of Discretionary Authority

A government official proves that he acted within the scope of his discretionary authority by showing " 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Id.* at 1487 (quoting *Rich,* 841 F.2d at 1564). The facts of this case clearly indicate that a wide array of personnel decisions, ranging from employee

---

4. In *McKinney v. Pate,* 985 F.2d 1502 (11th Cir. 1993), Chief Judge Tjoflat severely criticized the expansion by the Eleventh Circuit of substantive due process rights into the area of public employment:

> While the Supreme Court has used substantive due process as a means of recognizing fundamental rights "implicit in the concept of ordered liberty," the Eleventh Circuit has strayed from this narrow path and created for state or local employees a "substantive" right not to be terminated for pretextual reasons even where state procedures exist which would correct the injustice and make them whole.

*McKinney,* 985 F.2d at 1507–08 (Tjoflat, C.J. concurring). In his concurrence, however, Chief

Judge Tjoflat concluded: "[T]he wayward jurisprudence of our circuit is a clear, though errant, guide. We must follow it until we review the issue *en banc." Id.* at 1515. On June 17, 1993, the Eleventh Circuit Court of Appeals vacated the decision in *McKinney* and ordered that the case be reheard by the court *en banc. McKinney v. Pate,* 994 F.2d 772, 773 (11th Cir.1993). Apparently, the basis for the rehearing is to address the issues raised by Chief Judge Tjoflat in his concurrence to the first *McKinney* decision.

5. "Whether an official is entitled to qualified immunity is an issue of law." *Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir.1990).

discipline to recommendations for promotion, fall within the scope of Larry West's authority as Chief of the Warner Robins Fire Department. Accordingly, the court finds that the actions of Chief West, in reprimanding plaintiff and in recommending another firefighter for the fire engineer position, were undertaken pursuant to the performance of his duties as Fire Chief, and within the scope of his authority.

### B. Clearly Established Law

It is plaintiff's burden to show that defendant West's actions violated clearly established constitutional law. "Unless it can be said that the state of the law was of such clarity that a reasonable official should have been on notice that his or her challenged conduct was unlawful, that official is entitled to qualified immunity." *Nicholson v. Georgia Department of Human Resources*, 918 F.2d 145, 147 (11th Cir.1990). Whether a prospective promotion is considered a property right for constitutional purposes involves an ill-defined area of due process jurisprudence. In an area of such uncertain constitutional parameters, the reprimand of an employee, or the withdrawal of a recommended promotion, cannot be said to have violated clearly established constitutional law. Accordingly, defendants' motion for summary judgment on the issue of qualified immunity is **GRANTED**.

### CONCLUSION

Defendants's motion for summary judgment on the preclusive effect of the ALJ's factfinding is **GRANTED**. Defendants' motion for summary judgment on plaintiff's procedural due process claim is **GRANTED**. Defendants' motion for summary judgment on plaintiff's substantive due process claim is **GRANTED**. Finally, defendants' motion for summary judgment on the issue of qualified immunity is **GRANTED**.

**SO ORDERED.**